UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

RODOLFO TECOCOATZI-ORTIZ, DIEGO DE
LA CRUZ ROSAS, NEFTALI D. BATEN,
ADELAIDO GALEANA, JOSE PEREDA
ABARCA, CAMILO RAMOS FLORES, OMAR
RAUL ZAPOTITLAN SANCHEZ, RODOLFO
ZAPOTITLAN MONTES, ENRIQUE DOSITEO
ENCALADA ABAD, on behalf of themselves, and
on behalf of others similarly situated in the Proposed
FLSA Collective and Potential Rule 23 Class,
LUIS JOFREE LEMA MAYANCELA, ANTHONY
PETER ROSARIO, REYMUNDO MOLINA
MEDEL, and BERNALDO TLACZANI
CARRANZA, on behalf of themselves and others
similarly situated in the Potential Rule 23 Class,

Docket No.:  18-cv-07342
(JGK)

Plaintiffs,

-against-

JUST SALAD LLC  d/b/a Just Salad, JUST SALAD
600 THIRD LLC d/b/a Just Salad Murray Hill, JUST
SALAD GP LLC d/b/a Just Salad Fashion District,
JUST SALAD 134 37TH ST. LLC d/b/a Just Salad
Fashion District, JUST SALAD PARTNERS LLC
d/b/a Just Salad Financial District, JUST SALAD
315 PAS LLC d/b/a Just Salad 315 Park Avenue
South, JUST SALAD 320 PARK AVE LLC d/b/a
Just Salad Park Avenue, JUST SALAD 30 ROCK
LLC d/b/a Just Salad 30 Rock, JUST SALAD 706
6TH AVE LLC d/b/a Just Salad Chelsea, JUST
SALAD WWP LLC d/b/a Just Salad World Wide
Plaza, JUST SALAD 663 LEX LLC d/b/a Just Salad
Lexington, JUST SALAD PARK SLOPE LLC d/b/a
Just Salad Park Slope, JUST SALAD 8TH ST LLC
d/b/a Just Salad 8th Street (NYU), JUST SALAD
1471 3RD AVE LLC d/b/a Just Salad Upper East Side
(83RD AND 3RD), JUST SALAD 1ST AVENUE LLC
d/b/a Just Salad Upper East Side (70th and 1st), JUST
SALAD HUDSON SQUARE LLC d/b/a Just Salad
Hudson Square, JUST SALAD STATE STREET
LLC d/b/a Just Salad Downtown Brooklyn, JUST
SALAD HERALD SQUARE LLC d/b/a Just Salad
Macy's Herald Square, JUST SALAD 90 BROAD
STREET LLC d/b/a Just Salad Financial District (90

Broad Street), JUST SALAD 2056 BROADWAY
LLC d/b/a Just Salad Upper West Side, JUST
SALAD 140 8TH AVE LLC d/b/a Just Salad Chelsea
(8th Avenue), JUST SALAD 233 BROADWAY
LLC d/b/a Just Salad City Hall, JUST SALAD
WOODBURY LLC d/b/a Just Salad Woodbury,
JUST SALAD 291 7TH AVENUE LLC d/b/a Just
Salad FIT, JUST SALAD 437 5TH AVENUE LLC
d/b/a Just Salad Bryant Park and NICHOLAS F.
KENNER a/k/a Nick Kenner,

                                   Defendants.

-------------------------------------------------------------------x

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

                    MIRANDA SLONE SKLARIN
                    VERVENIOTIS LLP
                    Attorneys for Defendants
                    The Esposito Building
                    240 Mineola Boulevard
                    Mineola, New York 11501
                    (516) 741-7676

Of Counsel
Michael A. Miranda

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iv

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ................................................................................................2

ALL FEDERAL PLAINTIFFS WERE PAID THE MINIMUM WAGE

FEDERAL PLAINTIFFS ................................................................................................2

    Rodolfo Tecocoatzi-Ortiz ......................................................................................2

    Diego de la Cruz Rosas.........................................................................................2

    Neftali D. Baten....................................................................................................3

    Adelaido Galeana .................................................................................................3

    Jose Pereda Abarca...............................................................................................4

    Camilo Ramos Flores ...........................................................................................4

    Omar Raul Zapotitlan Sanchez ............................................................................5

    Rodolfo Zempoalteca Montes...............................................................................5

    Enrique Dositeo Encalada Abad ..........................................................................5

STATE PLAINTIFFS......................................................................................................6

    Luis Jofree Lema Mayancela ...............................................................................6

    Anthony Peter Rosario..........................................................................................6

    Reymundo Molina Medel and Bernaldo Tlaczani Carranza................................6

    A.  Store Practices ...............................................................................................7

ARGUMENT

POINT I
    THE CLAIMS AGAINST MR. KENNER AND STORES AT WHICH PLAINTIFFS
    DID NOT WORK SHOULD BE DISMISSED...............................................................9

POINT II
THE 7 STATE PLAINTIFFS HAVE NO FLSA CLAIMS ............................................10

POINT III
ROSARIO'S CLAIMS SHOULD BE DISMISSED ......................................................11

POINT IV
DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS'
MINIMUM WAGE CLAIMS (COUNTS V AND VI) ...................................................11

   A. ALL 9 FEDERAL PLAINTIFFS WERE PAID THE FEDERAL MINIMUM WAGE ..................11

   B. DEFENDANTS COMPLIED WITH THE TIP-CREDIT NOTIFICATION REQUIREMENTS .........12

   C. PLAINTIFFS DID NOT WORK MORE THAN 20% OF THEIR TIME PERFORMING NON-
      TIPPED DUTIES ..........................................................................................13

POINT V
DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS'
UNLAWFUL DEDUCTIONS CLAIMS (COUNTS I, II, III, AND IV).........................16

   A. PLAINTIFFS HAVE NOT ESTABLISHED THEIR CLAIMS FOR STOLEN TIPS.....................16

   B. THE DELIVERY FEE WAS NOT IMPROPER ..................................................................17

POINT VI
DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS'
OVERTIME CLAIMS (COUNTS VII, VIII AND IV) ...................................................17

POINT VII
DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS'
STATE SPREAD OF HOURS CLAIM (COUNT X).....................................................20

POINT VIII
DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS'
STATE WAGE NOTICE AND PAYSTUB CLAIMS (COUNTS XI, XII, AND XIII) .20

   A. DEFENDANTS COMPLIED WITH THE RECORD-KEEPING REQUIREMENTS.....................20

   B. DEFENDANTS COMPLIED WITH STATE TIME OF HIRE WAGE NOTICE REQUIREMENTS. 20

   C. DEFENDANTS COMPLIED WITH STATE WAGE STATEMENT REQUIREMENTS ................21

POINT IX
    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS'
    BREACH OF IMPLIED CONTRACT CLAIM FOR UNIFORM PAY AND BICYCLE
    MAINTENANCE COSTS (COUNTS XIV AND XV) .................................................21

CONCLUSION....................................................................................................................23

## **TABLE OF AUTHORITIES**

**Cases**

Belizaire v. Ahold U.S.A., Inc., 796 F. App'x 51, 52 (2d Cir. 2020)..........................17

Brown v. Daikin Am. Inc., 756 F.3d 219, 226 (2d Cir. 2014) ....................................9

Carvente-Avila v. Chaya Mushkah Restaurant Corp., 2016 WL 3221141, at *1 (S.D.N.Y. 2016)
............................................................................................................................13

Danzer v. Norden Systems, Inc., 151 F.3d 50, 57 (2d Cir. 1998) ..............................15

Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144 (2d Cir. 2004)............................13

Granados v. Traffic Bar and Rest., Inc., 2015 WL 9582430, at *14 (S.D.N.Y. Dec. 30, 2015)...11

Gregory v. Stewart's Shops Corp., 2016 WL 8290648, at *17 (N.D.N.Y. 2016).......................22

Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132 (2d Cir. 1999)....................................9

Irizarry v. Catsimatidis, 722 F.3d 99, 109 (2d Cir. 2013) cert. denied, 134 S. Ct. 1516 (2014).....9

Kamdem-Ouaffo v. Pepsico, Inc., 160 F.Supp.3d 553 (S.D.N.Y. 2016)...........................13

Kirschner v. Klemons, 225 F.3d 227, 239 (2d Cir. 2000).........................................11

Marciano v. DCH Auto Group, 14 F.Supp.3d 322 (S.D.N.Y. 2014)...........................13

Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ......................................11, 12

Mendez v. Intern. Food House Inc., 2014 WL 4276418, at *3-5 (S.D.N.Y. 2014) ....................13

Millenium Expressions, Inc. v. Chauss Marketing, Ltd., 2007 WL 950070, at *5 (S.D.N.Y. 2007)
............................................................................................................................21

Montellano-Espana v. Cooking Light Inc., 2016 WL 4147143, at *6 (E.D.N.Y.2016)..............22

Oram v. SoulCycle LLC, 979 F.Supp.2d 498, 507 (S.D.N.Y. 2013) ..........................21

Salinas v. Starjem Restaurant Corp., 123 F.Supp.3d 442, 470-471 (S.D.N.Y. 2015); 29 U.S.C. §
203(m)..............................................................................................................13

Valentine v. Museum of Modern Art, 29 F.3d 47, 49-50 (2d Cir.1994).......................11

Yu G. Ke v. Saigon Grill, Inc., 595 F.Supp.2d 240, 257-58 (S.D.N.Y. 2008).............................21

**Statutes**

12 NYCRR § 146-1.6...................................................................................20

29 C.F.R. § 790.21(b)..................................................................................10

29 U.S.C. § 206(a)(1)..................................................................................11

29 U.S.C. § 255(a) ....................................................................................10

Fed. R. Civ. P. 37(d)(1)(A)(i); (d)(3)................................................................11

NY Labor Law § 195-1(a).............................................................................20

NYCRR § 146-2.1......................................................................................20

NYLL § 195-3 ..........................................................................................21

## <u>PRELIMINARY STATEMENT</u>

This brief is submitted in support of the defendants' motion for summary judgment dismissal of the complaint.  Briefly, despite this Court's decisions in <u>Camara</u> and its denial of the collective motion at bar (ECF No. 75), plaintiffs' counsel persists in making arguments that have already been rejected by this Court on substantially similar facts.  For these reasons, and those set forth below, we request that the complaint be dismissed.

## STATEMENT OF FACTS

It is undisputed that seven (7) of the plaintiffs made more than the Federal minimum wage during the limitations period, even without use of the tip credit.  For the remaining plaintiffs, Just Salad was entitled to take the tip credit.

### ALL FEDERAL PLAINTIFFS WERE PAID THE MINIMUM WAGE

All Federal Plaintiffs made more than the Federal minimum wage of $7.25 during the vast majority of limitations period of August 2015-2018. Each employee's work history and wages earned are detailed below.[1]

### FEDERAL PLAINTIFFS

**Rodolfo Tecocoatzi-Ortiz**

Ortiz was employed as a deliveryman from May 2011[2] to November 2016.  Ex. Q at ¶ 3; Ex. B at p. 14. Ortiz worked briefly at 140 8th Avenue, 90 Broad Street, 2056 Broadway, and 663 Lexington during the 3 year limitations period.  Ex. B at p. 21.

Ortiz received $14,449 in tips and $17,557 in hourly wages in 2015 at $8.00/hour ($15.68/hour when tips are added)[3]; and $9,922 in tips and $10,838 in wages in 2016 at $8.10 and $9/hour ($16.06/hr.). Ex. GG.  He makes no tip theft claim.

**Diego de la Cruz Rosas**

Rosas started in March of 2009, and worked until September 2017. Ex. C at pp. 20-21. Rosa's schedule was Monday through Thursday from 11 a.m. until 9:00 p.m., and Fridays 11 a.m. to 3 p.m. Ex. C at pp. 27-28.  After Rockefeller Center, Rosas worked at 600 3rd Avenue and then 320 Park Avenue. Ex. C. at p. 29.

---

[1] A table listing all plaintiffs and where they worked during the Federal limitations period is Ex. XX to the Miranda Declaration.

[2] Ortiz and Rosas' pre-2012 claims would be time-barred even under the State statute of limitations.

[3] All parentheticals reflect the actual per hour wage rate, inclusive of tips.

In 2012, he made $20,230 in tips and $17,187 in hourly wages at $6.50/hour ($15.49/hour); in 2013, $23,495 in tips and $26,611 at $6.50/hour ($15.96/hour); in 2014, $20,822 in tips and $20,445 at $7.00/hour ($16.06/hour); in 2015, $18,696 in tips and $16,623 at $7.00/hour ($15.79/hour); in 2016, $10,706 in tips and $9,993 at $7.50/hour ($15.60/hour); in 2017, $8,345 in tips and $6,213 at $7.50/hour ($17.57/hour). Ex. HH.

On January 12, 2017, Rosas signed a Spanish Tip Credit Notice and handbook receipt. Exs. UU & VV.  Rosas also signed the requisite 195 Form, also in Spanish. Ex. C at p. 83; Ex. WW.

### Neftali D. Baten

Baten was employed from January 18, 2016 to November 15, 2016 at 600 3rd Avenue, working from 5 p.m. to 10 p.m. Monday through Friday, and on some Saturdays working from 12 p.m. until 9 p.m.  Ex. D at p. 20; Ex. S at ¶ 4.  Despite his contradictory Affidavit, he testified that 3rd Avenue was the only store that he worked at.  Ex. D at p. 40.  He also testified that he never worked more than 40 hours, and never worked over 10 hours in one day. Ex. D at pp. 49-51.

He signed the Tip Credit Notification and Handbook Receipt at the time of his hiring in 2016. Exs. UU & VV. Baten received $8,591 in tips in 2016 and $7,915 in wages at $7.50/hour ($15.64/hour). Ex. II.

### Adelaido Galeana

Galeana worked from February 2015 until June of 2018 at 320 Park. Ex. E at pp. 19-20. When he started, he worked from 10:30 a.m. until 2 p.m., three or four days a week.  Ex. E at p. 27. Galeana testified that subsequently his hours increased as he would work Monday through Friday from 5 p.m. to 9 p.m., but that he would never work more than four hours in a day. Ex. E at pp. 27-28.

Galeana signed the 195 Form twice, the Tip Credit Notification in Spanish on January 2, 2018 and Handbook receipt on April 26, 2018.  Exs. UU, VV, WW.  In 2016, Galeana received $9,033 in tips and $6,233 in hourly wages at $7.50/hour ($18.52/hour). In 2017, he received $15,799 in tips and $10,331 at $7.50/hour ($19.02/hour).

**Jose Pereda Abarca**

Abarca was employed from May 2011 until September 2017 at 320 Park. Ex. U at ¶ 3. From 2011 through 2015, Abarca would typically work Monday through Thursday 10:30 to 8:30 and 10:30 for a shorter time on Fridays. Ex. F at p. 18.  In 2015, Abarca would come in at 11:00 and leave at various times, resulting in, at most, 35 hours/week. Ex. F at pp. 18-19.

195 Forms were signed on May 3, 2011; December 23, 2015; August 18, 2015; and again on January 11, 2017.  Ex. WW. Abarca signed a Spanish Tip Credit Notification on January 11, 2017. Ex. VV.  In 2012, he made $23,028 in tips and $13,537 in hourly wages at $5.95/hour ($16.85/hour); in 2013, $24,696 in tips and $14,444 at $5.95/hour ($17.17/hour); in 2014, $25,246 in tips and $14,247 at $5.95/hour ($17.51/hour); in 2015, $23,942 in tips and $14,075 at $5.95/hour ($17.02/hour); in 2016, $23,047 in tips and $14,290 at $7.50/hour ($19.69/hour); in 2017, $16,315 in tips and $9,817 at ($7.50/hour ($19.96/hour). Ex. KK.

**Camilo Ramos Flores**

Flores was employed from August 2016 until June 2018. Ex. G at p. 18; Ex. V at ¶ 3. Flores worked solely at 320 Park, Monday through Friday from 10 a.m. until 2 p.m. each day, never working past 3:30. Ex. G at pp. 24-25.

Flores signed a Tip Credit Acknowledgement 3 times while employed. Ex. VV. Flores signed three 195 forms including at time of hire in 2016.  Ex. WW. Flores also signed Handbook receipts on August 4, 2016 and April 25, 2017. Ex. UU. Flores made $1,117 in tips, and  $785

hourly ($7.50/hour) in 2016 and ($18.28/hour), and $11,137 in tips and $6,447 hourly at $7.50/hour in 2017 ($20.46/hour). Ex. LL.

**Omar Raul Zapotitlan Sanchez**

Sanchez worked at 600 Third from March 2015 until May 2015, and again from March 2016 until July 2016. Ex. W at ¶ 4; Ex. H at p. 52. He worked 6 hours per day for 5 days per week for a maximum of 30 hours a week, admitting that his claim of working 42 hours was inaccurate. Ex. H at p. 54.

Sanchez signed a 195 Notice and a Spanish Tip Notice on March 3, 2016, as well as a Handbook receipt on February 26, 2015. Exs. UU, VV, WW. Sanchez made $3,312 in tips and $2,748 at $6.00/hour for 2015 ($13.68/hour), $6,280 in tips and $5,480 at $7.50/hour in 2016 ($16.10/hour). Ex. MM.

**Rodolfo Zempoalteca Montes**

Montes was employed from March 2015 until April 2017. Ex. X at ¶ 3.  His schedule was Monday through Friday from 10 a.m. to 2 p.m., with some days staying until 3 p.m. if it was busy. Ex. I at p. 28.  If he worked during the day, he would not work an evening shift, and if he worked an evening shift, he would not have worked a morning shift, as he inaccurately claimed in his affidavit. Ex. I at pp. 75-76.

Montes signed a 195 notice on November 1, 2016 and a Handbook receipt on March 2, 2015.  Exs. UU & WW.   In 2015 he earned $13,012 in tips and $12,108 at $6.25/hour ($13.66/hour), in 2016, $9,315 and $11,709 at $7.50/hour ($13.49/hour). Ex. NN.

**Enrique Dositeo Encalada Abad**

Abad was employed from December 2009 until October 2017.  Ex. J at p. 10, 13.  Abad worked at 30 Rock; 600 Third; and 37th Street during the limitations period. Ex. J at pp. 18-19. Abad worked the same Monday to Friday schedule. Ex. J at p. 20.  At 30 Rock, Abad worked 11

a.m. until 9 p.m. Monday through Thursdays, and 11 a.m. to 3 p.m. on Fridays. Ex. J at p. 18. At 600 Third, at first he only worked part-time for lunch, but sometimes received more hours in the afternoon. Ex. J at p. 25. He then transitioned to full time, starting at 11:30 and working 9 hours a day Mondays through Thursdays. Ex. J at p. 27.

Abad signed both 195 and Spanish Tip Notices on January 1, 2017 and December 17, 2017. In 2015, $18,882 in tips and $16,377 at $7.00 ($15.87/hour); in 2016, $11,855 in tips and $10,736 at $7.50/hour ($15.95/hour); in 2017 $11,030 in tips and $6,782 at $7.50/hour ($19.70/hour). Ex. OO.

### STATE PLAINTIFFS

### Luis Jofree Lema Mayancela

Mayancela worked from September 2014 until October 2016. Ex. K at p. 23. He claims that when he first started, for two months, he worked 79 hours per week starting at between 9 and 10 a.m. and finishing between 10 and 11 p.m. Ex. K at p. 37. After those first two months, Mayancela testified that his hours were cut down and he would work maybe 30 hours per week. Ex. K pp 37-38. None of the payroll records support the claim that Mayancela worked close to 79 hours for two months, and plaintiff admitted that the records accurately reflected the hours he worked. Exs. PP, DDD at ¶113.

Mayancela signed a Handbook receipt on March 21, 2016, a Spanish Tip Notice on March 22, 2016, and a 195 Notice on March 29, 2016. Exs. UU, VV, WW. In 2015 he made $9,429 in tips and $3,993 at $5.65/hour ($19.11); in 2016, $12,874 in tips and $8,490 at $7.50/hour ($18.88). Ex. QQ.

### Anthony Peter Rosario

Despite this court's order requiring that he be deposed, Rosario did not testify in this action. Payroll records show that Rosario worked at the 600 3rd location from August 2012 until May

6

2014. Ex. CCC.   Rosario signed Section 195 Notices on August 12, 2012 and April 22, 2014 and

Handbook acknowledgements on August 1, 2012 and April 22, 2014. Ex. UU & WW.

**Reymundo Molina Medel and Bernaldo Tlaczani Carranza**

Medel and Carranza have not worked since October 2012 and December 2011,

respectively.

### A. **Store Practices**

Just Salad kept personnel files for all employees, saving documents that plaintiffs signed

acknowledging the Tip Credit policy.  Ex. A at p. 56. An employee handbook was given to every

employee.  Ex. TT. There were both English and Spanish language versions of the Handbook. Ex.

A at p. 69. Upon receipt of the employee handbook, employees signed the acknowledgement,

either digitally, or by hand. Exs. UU.   Each handbook outlined the Tip Credit:

> Federal and state law permits the Company to take a tip credit toward the
> minimum hourly wages paid to certain tipped employees. Therefore, in
> consideration of the additional tip income received by service staff, the
> Company takes a tip credit with respect to the hourly rate paid directly to such
> employees. As a result, the hourly rate paid directly to such employees by the
> Company is less than the standard statutory minimum hourly wage rate.

> Ex. TT.

Further, the weekly paystubs that plaintiffs received all contained the following

message:

> > > > MESSAGES < < <
> Hospitality ind: food serv wrkrs-tip cred up to $3.75hr (othr
> serv wrkrs up to 3.10) taken toward $8.75hr min wage. NET PAY
> If cash wage + tips < 8.75hr, tip makeup added to = 8.75hr

Ex. ZZ.

Local Store Managers informed the plaintiffs of their wage, schedule, the tip credit, and

responsibilities at their time of hire, in both English and Spanish. Martinez Aff. at ¶ 5-7.

Additionally, the stores had posters in both English and Spanish regarding the minimum wage, where they could be seen by plaintiffs.  Martinez Aff. at ¶ 8.

Defendants also had safeguards in place to ensure that plaintiffs would not perform non-tipped duties in excess of 20%.  Abrams advised managers in writing not to let delivery workers work more than 10-15% on non-tipped tasks. Ex. A at pp. 74-75.  Abrams also wrote a memo to deliverymen in Spanish re: non-tipped work. Delivery workers were sent back out to make deliveries so quickly, they did not have time to perform many other tasks besides deliveries. Martinez Aff. at ¶¶ 9-10. Occasionally, delivery workers would do simple tasks such as sweeping or restocking drinks to make sure deliveries were made more efficiently. Martinez Aff. at ¶ 11. These tasks were not done more than once per week. Id.

Beginning in September 2017, online delivery services were used to make deliveries. These services charged a fee, which was not retained by Just Salad, and was  passed on to the customers in the form of a delivery fee. Martinez Aff. at ¶ 13; Ex. Green Aff. at ¶ 29.  The customer was expressly notified the delivery fee was not a tip.  Ex. YY.

# ARGUMENT

## POINT I

### THE CLAIMS AGAINST MR. KENNER AND STORES AT WHICH PLAINTIFFS DID NOT WORK SHOULD BE DISMISSED

To qualify as an "employer," an individual must possess control over a Company's "operations" in a manner that relates to a specific plaintiff's employment. Irizarry v. Catsimatidis, 722 F.3d 99, 109 (2d Cir. 2013) cert. denied, 134 S. Ct. 1516 (2014). To determine control over a plaintiff, the factors include whether the individual controlled the employees' schedules or determined the rate and method of payment for the employees. Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).  Such factors must be analyzed with an eye to the "economic reality" of the company. Id.  Simply because an individual is an owner of a company or otherwise makes corporate decisions outside an employee's functions is insufficient. Irizarry at 109.

Mr. Kenner never gave direction to, or hired any Plaintiff. See Kenner Aff. at ¶ 3.  Thus, Plaintiffs are unable to show Mr. Kenner satisfied a single element of the economic reality of an "employer," and the claims against him must be dismissed.

Nor are the Just Salad Entities a single integrated enterprise. Multiple legally distinct entities will only be liable as a single employer if they have: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." Brown v. Daikin Am. Inc., 756 F.3d 219, 226 (2d Cir. 2014). The various Just Salad stores are not part of the same corporate structure as they each have their own manager, who is in control of the store's employees. Ex. Green Aff. at ¶ 5; Camara at pp. 23-24; ECF No. 75 at p. 16.  Correspondingly, those stores where an employee did not work have no control over that employee.  Id.

Nor is it clear what the claim against the general Just Salad LLC entity is at this juncture.

Discovery has not disclosed any basis for liability as it is undisputed that each plaintiff was paid and supervised by the store at which he worked.  Ex. Green Aff. at ¶ 5; Ex. B at pp. 15-16; Ex E at pp. 22-23.

Plaintiffs filed claims against 24 separate LLC locations, 12 at which none of the Plaintiffs ever worked -- all of which should be dismissed.[4]  Moreover, as to the remaining 12, a review of the undisputed proof reflects not only that plaintiffs worked there for miniscule periods of time, but they were properly compensated during their admittedly short stints, as explained below.  The 9 Federal plaintiffs were paid above the Federal minimum wage, and never worked at these "outlier"[5] locations, thereby mooting the tip credit issue in its entirety.

## POINT II

## THE 7 STATE PLAINTIFFS HAVE NO FLSA CLAIMS

The FLSA is subject to a three-year statute of limitations, where there are willful claims as at bar. 29 U.S.C. § 255(a).  FLSA claims accrue "when the employer fails to pay the required compensation for any work week at the regular pay day for the period when the workweek ends." 29 C.F.R. § 790.21(b).

Carranza last worked in December 2011, and thus was required to bring an FLSA claim by December 2014. Exs. XX, ZZ. Medel worked from January 2009 to October 2012, and thus was required to bring an FLSA claim by October 2015.  The complaint was filed on August 14, 2018. ECF No. 1. Accordingly, neither Medel nor Carranza has timely asserted a Federal claim.

---

[4] The 12 LLCS which must be dismissed are JUST SALAD GP LLC d/b/a Just Salad Fashion District; JUST SALAD PARTNERS LLC d/b/a Just Salad Financial District; JUST SALAD HUDSON SQUARE LLC; JUST SALAD STATE STREET LLC; JUST SALAD PARK SLOPE LLC; JUST SALAD HERALD SQUARE LLC; JUST SALAD 2056 BROADWAY LLC; JUST SALAD 140 8TH AVE LLC; JUST SALAD WOODBURY LLC (which did not have delivery services); JUST SALAD 291 7TH AVENUE LLC; JUST SALAD 437 5TH AVENUE LLC.

[5] As explained below and in the table, the 9 Federal plaintiffs essentially worked at 5 stores at most: 320 Park, 600 3rd Ave., 37th Street, 663 Lexington Ave., and 30 Rock.

Similarly, the State claimants outline above are also admittedly time-barred under the Federal statute.

The court should not exercise its supplemental jurisdiction for the state law claimants.  See Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998). Courts have declined to exercise supplemental jurisdiction over state law claims because they did not arise out of the same facts as the federal claims.  Kirschner v. Klemons, 225 F.3d 227, 239 (2d Cir. 2000). The evidence for each state Plaintiff's claims are distinct since each Plaintiff's paystubs are maintained separately; each Plaintiff worked at different times; at different locations; and worked different schedules. See Exs. L-O.  Thus, the seven state law claimants should be dismissed.

## POINT III

## ROSARIO'S CLAIMS SHOULD BE DISMISSED

Rosario has failed to appear for his deposition in violation of this Court's order. ECF No. 104; Fed. R. Civ. P. 37(d)(1)(A)(i); (d)(3).  Failure to appear for a deposition is grounds for dismissal. Valentine v. Museum of Modern Art, 29 F.3d 47, 49-50 (2d Cir.1994). Rosario failed to appear or even make himself available. ECF No. 104; Ex. FF.  Nor did plaintiffs' counsel make an attempt to reschedule or seek additional time from this court. Ex. FF.  Nor have they provided explanation for his failure to attend the Court ordered deposition, which further warrants dismissal. Granados v. Traffic Bar and Rest., Inc., 2015 WL 9582430, at *14 (S.D.N.Y. Dec. 30, 2015).

## POINT IV

## DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' MINIMUM WAGE CLAIMS (COUNTS V AND VI)

### A.  ALL 9 FEDERAL PLAINTIFFS WERE PAID THE FEDERAL MINIMUM WAGE

The Federal non-tipped employee minimum was $7.25 per hour as of July 2009. 29 U.S.C. § 206(a)(1).  The Federal plaintiffs time period of August 2015-2018, or to their last day of employ.

Specifically, the following facts are undisputed:

- Ortiz earned between $8.00 and $9.00 per hour for up to forty hours per week, and between $12.35 and $13.50 per hour for any hours beyond forty per week from August 2015 through the end of his employ  2016. Ex. GG.

- Baten earned $7.50/hour, and did not work overtime during this period. Exs. S at ¶¶ 7-8; II.

- Galeana earned $7.50/hour and did not work overtime during this period. Ex. JJ.

- Flores earned $7.50/hour and did not work overtime during this period. Ex. LL.

The remaining Federal plaintiffs (Rosas, Abarca, Sanchez, Montes, and Abad) all earned at least $7.50/hour from January 1, 2016 through their last day of employ.[6] Exs. HH, KK, MM, NN, OO.

As such, for the vast majority of the 3 year limitations period, Plaintiffs have not alleged any Federal wage violations, and these claims should be dismissed. As in Camara, we submit this Court should then not exercise its supplemental jurisdiction for any of the remaining state law claims. See Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998).

**B.  DEFENDANTS COMPLIED WITH THE TIP-CREDIT NOTIFICATION REQUIREMENTS**

Assuming arguendo, that the Court delves into the tip credit issue, Defendants provided notice of the tip credit on weekly pay stubs, in Spanish via signed explicit tip credit notices, and also set forth the actual tips in weekly tip reporting sheets. Exs. VV, WW, ZZ. So too, had the tip credit not been taken, Plaintiffs would not have retained their tips, thereby making far less.

The purpose of the tip credit is to allow an employer to take a credit against the minimum wage -- so long as the wage paid plus the employee's tips equal at least the statutory minimum wage -- which is not an issue at bar given the large amounts in tips paid to Plaintiffs. 12 NYCRR

---

[6] From August 2015 through December 31, 2015 these 5 did earn slightly less than $7.25.  Exs. HH, KK, MM, NN, OO, ZZ.

146; 29 C.F.R. section 531.59(b).

There is a notice requirement which the employer can satisfy, by demonstrating substantial compliance with all of the other minimum wage requirements and showing that its employees understood that the employer was taking the tip credit. Carvente-Avila v. Chaya Mushkah Restaurant Corp., 2016 WL 3221141, at *1 (S.D.N.Y. 2016) [citing Mar. 4, 2015 NYDOL Letter]. The Court emphasized the "need to prevent…an unjustified windfall for employees that have actual notice of their employer's tip credit practices," particularly since there is no explicit written requirement in Section 146-1.3. Id. Judge Forrest held that the statutory interpretation expressed in the NYDOL Letter was entitled to deference as it was consistent with the "regulatory and statutory scheme" of New York's other labor regulations.

As to the parties' understanding of the tip credit, 11 plaintiffs signed tip credit notices in Spanish (including 7 of the Federal plaintiffs). These Spanish notices advised them that they were making less than the minimum wage because they were keeping their tips. Exs. VV.  A party is under an obligation to read a document before she signs it, and a party cannot avoid the effect of the document on the grounds that she did not read it or know its contents--once it is signed.  Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144 (2d Cir. 2004); Marciano v. DCH Auto Group, 14 F.Supp.3d 322 (S.D.N.Y. 2014); Kamdem-Ouaffo v. Pepsico, Inc., 160 F.Supp.3d 553 (S.D.N.Y. 2016).  As such, their claims should be dismissed.

## C. PLAINTIFFS DID NOT WORK MORE THAN 20% OF THEIR TIME PERFORMING NON-TIPPED DUTIES

Under the FLSA, tipped employees who spend more than 20% of their working time engaged in non-tip-producing work are entitled to the minimum wage for only that time spent performing the non-tipped work. Salinas v. Starjem Restaurant Corp., 123 F.Supp.3d 442, 470-471 (S.D.N.Y. 2015); 29 U.S.C. § 203(m); Mendez v. Intern. Food House Inc., 2014 WL 4276418,

at *3-5 (S.D.N.Y. 2014).

Plaintiffs make conclusory allegations that they spent more than 20% of their time performing non-tipped work.  For several reasons, that was not possible, and the Court should disregard Plaintiffs' testimony regarding same.  In fact, much of the sworn testimony by the Plaintiffs show that these non-delivery tasks took small amounts of time that did not come close to meeting the 20% threshold.

For example, Flores testified that maybe once a day he would fill the refrigerator with soda for 10 to 20 minutes or mop the floor for up to 30 minutes. Ex. G at pp. 28, 30.  Flores' shifts were from 10:00 a.m. to 7:00 p.m., meaning he was only doing non-tipped work for 30 minutes of a 9-hour shift, well below the 20% threshold.  Ex. G at p. 49.  Indeed, Flores even admitted that as soon as he was done with a non-tipped task, he would immediately start doing deliveries.  Ex. G at p. 28.  Likewise, Abarca testified that during his 10 hour shift, he would stock the refrigerator with sodas and mop in the morning for approximately 30 minutes, again well below 20%.  Ex. F at pp. 20-21.

The Plaintiffs also testified that these tasks, such as mopping, restocking the refrigerator, and wiping down the tables, took between 15 to 30 minutes.  So too, the plaintiffs generally testified that they would take turns doing these tasks so they would not be doing them every day. Ex. F at p. 21.  Most Plaintiffs averaged shifts that last 4 to 5 hours, meaning the 15 to 30 minute non-tipped tasks took up much less than 20% of their shifts.  Ex. I at p. 28; Ex. D at p. 24; Ex. E at pp. 27-28.

Further, the Plaintiffs could not have generated the sizable tip income of $10,000 to $20,000 per year without making a correspondingly large number of deliveries. Plaintiffs were making between $8 per hour and $19.96 per hour in tips alone-per week. Exs. GG-SS.  Exs. HH

14

(Abarca $19.96/hour), KK (Abad $19.70/hour), OO (Rojas $17.57/hour).

Given the value of the orders being approximately $15 with an approximately 15% tip, Plaintiffs had to make a substantial amount of deliveries to accumulate the massive tips they earned.  Indeed, Plaintiffs admitted that they received only $2 per delivery.  Plaintiffs routinely testified to the high volume of deliveries that they would make: Ortiz stated he would make 70 deliveries per shift, Rosas, 80 to 110 deliveries per day. Ex. B at p. 40, Ex. C at p. 36.

Moreover, strict precautions were in place to protect deliverymen from performing non-tipped duties, as Ms. Abrams was aware that other fast food restaurants were being accused by deliverymen of working more than 20% on non-tipped tasks. Abrams instructed all store managers, in writing in 2013 and again in 2017, not to assign any deliverymen to perform more than 10-15% of their time doing non-delivery duties. Ex. A at p. 74.  This was reinforced at manager meetings, and by Abrams while visiting the stores. Ex. A at p. 71, 74-75.  Moreover, Abrams observed delivery drivers as never being idle, and stated that they made deliveries 95% of the time based on her observation of them not being in the stores. Ex. A at p. 72.

So too, Plaintiffs were expressly notified in Spanish and English memos in 2017 to complain to HR if they were performing non-tipped work. Ex. A p. 74.  Certainly, had the Plaintiffs actually been performing substantial non-tipped work, at least one of them would have complained to HR. None ever did. Ex. A at pp. 79-80. HR was located at 663 Lexington, right above the store at which some of the Plaintiffs worked, and in close proximity to the other stores. Moreover, as set forth above, the HR director was often in the stores. Ex. A at pp 72, 74-75.

Plaintiffs' shifting testimony should give the Court pause before allowing these double-dipping claims to go to a jury. The Court can and should disregard their affidavits and entire deposition testimony regarding performing non-tipped duties. See Danzer v. Norden Systems, Inc.,

151 F.3d 50, 57 (2d Cir. 1998). The documentary evidence of the amount of tips and deliveries needed to generate those tips refutes their general, contradictory testimony. Exs. GG-SS. Simply stated, it is impossible to reconcile plaintiffs' spending so much time on non-tipped work and generating up to $20,000 a year in tips when they did not work long shifts. So too, the court can not give credence to their testimony that they never stopped working on non-tipped duties while they were in the store. Ex. B at pp. 26-27. That strains all rational thought -- particularly given the small sizes of the stores.

In view of the foregoing, the statutory purpose of the tip credit has been amply satisfied at bar. When accounting for the extraordinary amount that they made in tips per year of between $10,000 and $20,000 per year, all Plaintiffs made far greater than the minimum wage at all points. In addition to their hourly wages of at least $7 to $8/hour, the Plaintiffs earned, at minimum, $8/hour in tips. As such, the purpose of the statute was fully satisfied.

## POINT V

### DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' UNLAWFUL DEDUCTIONS CLAIMS (COUNTS I, II, III, AND IV)

#### A. PLAINTIFFS HAVE NOT ESTABLISHED THEIR CLAIMS FOR STOLEN TIPS

Only Plaintiff Carranza made the direct claim in his sworn testimony that Defendants took unlawful deductions by stealing his tips. Ex. M at p. 56-57. However, Carranza's claims are time barred and no other non-time barred Plaintiff made any similar allegation in their testimony. Multiple Plaintiffs (i.e. Mayancela, Galeana and Sanchez) testified that they did not have any issues with their tips. Ex. K at pp. 60-61; Ex. E at pp. 44, 66; Ex. H at pp. 42, 50. For example, Galeana testified that his managers never kept any tips. Ex. E at p. 44. When questioned on how this testimony conflicted with his affidavit, Galeana again stated that he had no reason to suspect that he was not given the correct amount in tips each week. Ex. E at. p. 66. Similarly, Ortiz stated

16

he could not testify if tips were taken.  Ex. B at p. 48.

In addition, some Plaintiffs only reported rare errors that were then quickly corrected. Gutierrez stated that his tips were always correct, except once or twice, and then it was immediately fixed.  Ex. P at p. 34.  Ramirez testified that his tips were correct every day, except for one (1) time. Ex. O at p. 39.

Also, all Plaintiffs received a full accounting of tips on their weekly paystubs. Ex. ZZ. For Plaintiffs to now claim years later that tips were stolen is disingenuous, especially when multiple Plaintiffs testified to the fact that they always received the full amount of their tips. As such, Defendants are entitled to summary judgment on these claims.

## B. THE DELIVERY FEE WAS NOT IMPROPER

Plaintiffs further allege that as of September of 2017, Just Salad instituted a "delivery fee" across all locations. Plaintiffs allege that their tips were illegally retained as a result of not receiving the delivery fee, although they do not explain why they were even entitled to retain this fee.

Firstly, a majority of the plaintiffs (i.e Oritz, Baten, Sanchez, Montes and Mayancela) did not work for any defendant after September 1, 2017; as that is when Grub Hub and Seamless took over deliveries. Martinez Aff. at ¶ 13.  In fact, these companies instituted the fee and were the beneficiary of the fee -- not Just Salad. See Green Affidavit at ¶¶ 29-30.  Therefore, most Plaintiffs' tips could not have possibly been illegally retained through the alleged delivery fee, as most Plaintiffs were not employed when it instituted the delivery fee.

So too, for a viable tip retention claim based upon a delivery fee, Plaintiffs must demonstrate that a reasonable customer would have believed the delivery fee was intended as a tip. See Belizaire v. Ahold U.S.A., Inc., 796 F. App'x 51, 52 (2d Cir. 2020).  Here, Plaintiffs have made no such showing as when the delivery fee was instituted, it was made clear on the order form

that this was a fee -- not a tip. Ex. Green Aff. at ¶ 29.  It was explicitly stated on the order form: "A delivery fee will be applied, but it is not a gratuity, and it is not distributed to the delivery staff. Feel free to reward exceptional service.  But please do not feel obligated to do so."  Ex. YY.

Moreover, the delivery fee went to the online services, and not to the stores.  Ex. Green Aff. at ¶ 30.  As a result of the delivery fee, no delivery worker ever complained of customers not tipping because of the fee, and no customer told defendants that they believed the delivery fee was intended to be a tip.  Martinez Aff. at ¶ 13.

Further, the payroll records show that the delivery fee had no bearing on the plaintiffs' tips as they continued to earn hundreds of dollars per week in tips, and still earned above the statutory minimum wage. For example, most delivery persons earned more per hour in tips in 2017, when the delivery fee went into effect, than they had previously. Exs. HH,  KK, LL, OO, RR, SS, QQ. Moreover, Plaintiffs admit that any decrease in their tips was due to the volume of orders decreasing after the delivery fee was  put in place, and the average tip per order did not decrease. Ex. C at pp. 94-95.  As such, Plaintiffs' claim that the delivery fee was a way to illegally retain their tips is baseless.

## POINT VI

### DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' OVERTIME CLAIMS (COUNTS VII, VIII AND IV)

Plaintiffs allege that Defendants had a practice of refusing to pay overtime. At bar, there were many weeks in which the Plaintiffs did not work more than 40 hours.  Significantly most of the Plaintiffs never worked overtime. Exs. Q-DD. The paystubs evidence that all Plaintiffs were paid overtime for weeks in which they actually worked more than 40 hours. Exs. GG-SS.

Some of the Plaintiffs simply lied in their affidavits regarding overtime. All twelve (12) Plaintiffs who submitted affidavits claim to not have been paid for overtime. Exs. Q-DD.  For

example, Sanchez claims to not have been paid overtime during the course of his entire employment. Ex. W.  However, Sanchez only worked a total of 10 hours overtime, and was concededly paid for it as he later admitted at deposition. Ex. W, Ex. H at p. 50.

Similarly, Mayancella swore in his affidavit that he was not paid overtime. Ex. Z. However, he then testified that he did not review his pay stubs, and another employee was the one who told him that he did not receive overtime. Ex. K at pp. 76-77.  In fact, Mayancela's paystubs show that he was paid overtime in 2015 for all hours worked over 40 hours. Ex. PP.

Likewise, Ramirez originally alleged and testified that he was never paid overtime, despite first testifying that he could not even remember if he ever worked 40 hours in a week.  Ex. O at p. 60.  Payroll records then shown to Ramirez reflect that he was paid a rate of $6.50/hour for 40 hours, and then an overtime rate of $10.875 for his overtime hours. Ex. O at p. 72; Ex. RR. However, Ramirez could not remember if he worked overtime or not, despite being shown the paystubs. Ex. O at p. 75.

Zempoalteca testified that when he stated in his sworn-to affidavit that he was not paid overtime, what he meant was that when he earned overtime, his hours would be reduced in subsequent weeks. Ex. I at pp. 71-72.  However, this is disproven by pay records that show Zempoalteca earned overtime in back to back weeks, and his admission that he was always paid the proper overtime rate for his work. See Ex. NN.  Ex. I at pp. 83-84.  Zempoalteca also stated that his hours would be reduced if the store was less busy, and was really not dependent on the overtime that he had previously earned. Ex. I at p. 85.

These examples and the pay records provide ample evidence that Plaintiffs who worked overtime hours were properly paid.  Thus, the Defendants are entitled to summary judgment dismissing Plaintiffs' overtime claims.

## POINT VII

## DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' STATE SPREAD OF HOURS CLAIM (COUNT X)

Under New York law, when the hours worked exceed ten in a single day, an employee shall receive one additional hour of minimum wage pay. 12 NYCRR § 146-1.6.

Despite the Complaint alleging that each Plaintiff worked more than 10 hours per day, many of the Plaintiffs testified to the contrary in their depositions, even stating that this never occurred.  Ex. D at p. 51; Ex. E. at p. 48; Ex. F. p. 35; Ex. H at p. 54; Ex. I at p. 79.  Moreover, the documentary evidence demonstrates that any claim by a Plaintiff that they worked more than 10 hours in a day can be refuted by payroll or timecard evidence.  Exs. GG-SS, ZZ.  As such, these claims should be dismissed.

## POINT VIII

## DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' STATE WAGE NOTICE AND PAYSTUB CLAIMS (COUNTS XI, XII, AND XIII)

### A.  DEFENDANTS COMPLIED WITH THE RECORD-KEEPING REQUIREMENTS

NYCRR § 146-2.1 requires that every employer maintain weekly payroll records  for each employee that show his pedigree information and wages paid.  Plaintiffs allege that Defendants did not preserve Plaintiffs' weekly payroll records fully. However, Defendants complied by maintaining all such payroll records -- which Defendants produced during discovery.  Exs. GG-SS. There is thus no basis to support Plaintiffs' claim.

### B.  DEFENDANTS COMPLIED WITH STATE TIME OF HIRE WAGE NOTICE REQUIREMENTS

New York's Wage Theft Prevention Act ("WTPA") requires employers to provide its employees with written notice regarding tip allowances.  NY Labor Law § 195-1(a).

Plaintiffs allege that Defendants failed to provide Plaintiffs with these section 195 notices.

This allegation conflicts with the documentary evidence and Plaintiffs' testimony. Exs. WW.

Galeana, Rosario, Flores, Guitierrez, Abad, Ramirez, Abarca, Mullo, Mayancela, Sanchez, and Mendel -- 11 plaintiffs -- were all provided with and signed one or more 195 forms, which identified, among other things, their wage rates, paydays, and tip credits. Ex. WW.  Moreover, these detailed 195 forms were in Plaintiffs' native Spanish. Ex. WW.

As such, Defendants are entitled to summary judgment dismissing this claim.

## C. DEFENDANTS COMPLIED WITH STATE WAGE STATEMENT REQUIREMENTS

The WTPA also requires employers to provide employees with a statement with every paycheck with information as to gross wage and allowances claimed. NYLL § 195-3.  As seen in the paystubs for each Plaintiff, Defendants provided Plaintiffs with weekly wage statements that fully complied with the law, and informed Plaintiffs of the tip credit. Exs. ZZ.  Accordingly, Plaintiffs' claim should be dismissed.

## POINT IX

**DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' BREACH OF IMPLIED CONTRACT CLAIM FOR UNIFORM PAY AND BICYCLE MAINTENANCE COSTS (COUNTS XIV AND XV)**

Under New York law, employers do not have to reimburse employees for business expenses. Oram v. SoulCycle LLC, 979 F.Supp.2d 498, 507 (S.D.N.Y. 2013). Vehicles such as bicycles are considered "tools of the trade," if employees are required to possess and utilize them in the course of their employment as at bar. Yu G. Ke v. Saigon Grill, Inc., 595 F.Supp.2d 240, 257-58 (S.D.N.Y. 2008). As with an express contract, the key element of a contract implied in fact is whether there is a mutual agreement between the parties. Millenium Expressions, Inc. v. Chauss Marketing, Ltd., 2007 WL 950070, at *5 (S.D.N.Y. 2007).

Plaintiffs allege that Defendants breached an implied contract by failing to reimburse them

for business expenses consisting of bicycle purchases and maintenance. However, they cannot show anything resembling a mutual agreement for reimbursement of these expenses. No Plaintiffs were told that they would be reimbursed, as most never even asked. Ex. A at p. 97.  In fact, they were told at hiring that bicycles were a prerequisite to getting the job.  Id.  All of the plaintiffs admittedly own their own bikes.  Exs. B-P.

Nor did any of the Plaintiffs produce receipts or other documentation to support their alleged expenses. Ex. C at p. 80; Ex. K at p. 64; Ex. O at p. 45; Ex. G at p. 38. Further, at the time many of the Plaintiffs never even reported any of their costs to defendants. Ex. J at p. 46; Ex. Z at p. 67; Ex. F at p. 32. Those few that did were informed by mangers that they would not pay for routine bicycle maintenance. Ex. D. at p. 41; Ex. E at p. 37; Ex. P at p. 37.

Further, Employers need not compensate employees for uniform maintenance pay in the case of "wash and wear" uniforms -- which these admittedly were. Montellano-Espana v. Cooking Light Inc., 2016 WL 4147143, at *6 (E.D.N.Y.2016); Gregory v. Stewart's Shops Corp., 2016 WL 8290648, at *17 (N.D.N.Y. 2016).  Plaintiffs were given multiple T-shirts that could be washed with regular laundry or easily hand washed, and a baseball hat. Ex. A at pp. 94-95. They were completely "wash and wear," and required no special laundering.  Ex. A at p. 99.  At bar, the Plaintiffs admitted that they washed their uniforms with their regular clothing or washed them by hand at their homes. Ex. D at p. 41; Ex. C at pp. 65-66; Ex. E at p. 26; Ex. B at p. 55.

As such, the uniforms clearly fit in the wash and wear exception and Just Salad is not required to reimburse them. Accordingly, these business expense claims must be dismissed.

## **<u>CONCLUSION</u>**

For the forgoing reasons, Defendants respectfully request the Court grant Defendants'

Motion for Summary Judgment and dismiss the Plaintiffs' claims in their entirety.

Dated: Mineola, New York
      July 1, 2021

                                      MIRANDA SLONE SKLARIN
                                      VERVENIOTIS LLP
                                      Attorneys for Defendants

                                      _____
                                      Michael A. Miranda
                                      Richard B. Epstein
                                      The Esposito Building
                                      240 Mineola Boulevard
                                      Mineola, New York 11501
                                      (516) 741-7676

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Michael A. Miranda, hereby certify that the total word count in the brief is 6,753 words in Times New Roman, 12 pt. type and that it has complied with the Federal Rules of Civil Procedure, Rule 32(a)(7).

Dated: Mineola, New York
       July 1, 2021

MIRANDA SLONE SKLARIN
VERVENIOTIS LLP
Attorneys for Defendants

_____
Michael A. Miranda
Richard B. Epstein
The Esposito Building
240 Mineola Boulevard
Mineola, New York 11501
(516) 741-7676