**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────

**RODOLFO TECOCOATZI-ORTIZ ET AL.,**

                              **Plaintiffs,**

          **- against -**

**JUST SALAD LLC, ET AL.,**

                              **Defendants.**

────────────────────────────────

          **18-cv-7342 (JGK)**

          <u>**MEMORANDUM OPINION**</u>
          <u>**AND ORDER**</u>

**JOHN G. KOELTL, District Judge:**

The plaintiffs in this case are sixteen former employees of Just Salad restaurant locations who worked as delivery persons.[1] The defendants are Just Salad LLC; twenty-four Just Salad franchises; and Nicholas Kenner, Just Salad's cofounder and chief executive officer. The plaintiffs advance fifteen causes of action, alleging that the defendants:

- Violated the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), and related regulations by illegally retaining tips (Counts 1 and 2);

- Violated the FLSA, NYLL, and related regulations by taking unlawful kickbacks (Counts 3 and 4);

- Violated the FLSA, NYLL, and related regulations by willfully failing to pay the minimum wage (Counts 5 and 6);

───────────────────

[1] The plaintiffs are Rodolfo Tecocoatzi-Ortiz, Diego de la Cruz Rosas, Neftali Baten, Adelaido Galeana, Jose Pereda Abarca, Camilo Ramos Flores, Omar Raul Zapotitlan Sanchez, Rodolfo Zempoalteca Montes, Enrique Dositeo Encalada Abad, Luis Jofree Lema Mayancela, Anthony Peter Rosario, Reymundo Molina Medel, Bernaldo Tlaczani Carranza, Jose Reinaldo Yuquilema Mullo, Felipe Ramirez Ocegueda, and Dario Fernandez Gutierrez.

- Violated the FLSA, NYLL, and related regulations by failing to pay the plaintiffs overtime wages (Counts 7, 8, and 9);

- Violated the NYLL and related regulations by failing to pay "spread of hours" wages (Count 10);

- Violated the NYLL and related regulations by failing to keep adequate weekly payroll records (Count 11);

- Violated the NYLL and related regulations by failing to provide tip credit notices at the time of hire and thereafter (Count 12);

- Violated the NYLL and related regulations by failing to provide the plaintiffs with compliant pay stubs (Count 13);

- Violated the NYLL and related regulations by failing to reimburse the plaintiffs for uniform maintenance costs (Count 14); and

- Breached an implied contractual obligation to reimburse the plaintiffs for costs associated with their bicycles and other delivery vehicles (Count 15).

Compl. ¶¶ 448-525.

The defendants have moved for summary judgment dismissing all the plaintiffs' claims pursuant to Federal Rule of Civil Procedure 56. The plaintiffs have moved for class certification pursuant to Federal Rule of Civil Procedure 23. For the following reasons, the defendants' motion for summary judgment is **granted in part and denied in part** and the plaintiffs' motion for class certification is **denied.**

### I.

The following facts are based on the parties' Local Civil Rule 56.1 statements and supporting papers and are undisputed

unless otherwise noted.[2]

Kenner is the founder and owner of Just Salad. Pl.'s Response to Def.'s 56.1 Statement ¶ 9 (ECF No. 140-59, the "Statement"). Kenner declared that he does not have day-to-day involvement with or supervision over delivery personnel and does not have control over scheduling and hiring/firing decisions. Id. ¶ 10. The plaintiffs contend that Kenner's responsibilities included oversight of the Just Salad human resources department and that he made decisions relating to the implementation of delivery fees and to transition away from using in-house delivery personnel in 2017. Id. ¶ 10-11. There is no evidence that any plaintiff had any interaction with Kenner during the time that the plaintiffs were employed by Just Salad. Id. ¶ 11.

The remaining defendants, other than Just Salad LLC, are entities associated with Just Salad franchise store locations. The plaintiffs point to no evidence in the record that sheds light on the legal relationship, if any, between Just Salad LLC and the other defendants.

The plaintiffs are former delivery workers for various Just Salad locations.[3] Tecocoatzi-Ortiz was employed as a delivery

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text.

[3] The defendants contend that the plaintiffs in this case only ever worked at the following locations: 320 Park Avenue (Just Salad 320 Park Ave LLC); 600 Third Avenue (Just Salad 600 Third LLC); 663 Lexington Avenue (Just Salad 663 Lex LLC); 1471 Third Avenue (Just Salad 1471 3rd Ave LLC); 30 Rockefeller

person from May 2011 to November 2016.[4] <u>Id.</u> ¶¶ 81-85. For most of this time, he worked at the 706 Sixth Avenue location. <u>Id.</u> Between February 2015 and November 2016, he worked at various other locations. <u>Id.</u>

De la Cruz Rosas was employed as a delivery person from March 2009 to September 2017. <u>Id.</u> ¶¶ 86-95. He was hired and started his employment at the Rockefeller Center location. <u>Id.</u> De la Cruz Rosas subsequently worked at the 600 Third Avenue and 320 Park Avenue locations and would occasionally fill in at other stores. <u>Id.</u>

Baten was employed as a delivery person from January 2016 to November or December 2016 at the 600 Third Avenue location. <u>Id.</u> ¶¶ 96-99. Over the course of his employment, Baten also delivered inventory to the 30 Rockefeller Plaza, 315 Park Avenue, and 663 Lexington Avenue locations. <u>Id.</u>

Galeana was employed as a delivery person from January 2016 to October 2018 at the 320 Park Avenue location. <u>Id.</u> ¶¶ 100-03. He also worked out of the 600 Third Avenue, 30 Rockefeller Plaza, and 663 Lexington Avenue locations.

---

Center (Just Salad 30 Rock LLC); 134 37th Street (Just Salad Fashion District); 90 Broad Street (Just Salad Financial District); 325 Hudson; and 2056 Broadway (Just Salad Upper West Side). Statement ¶ 8.

[4] The parties appear to dispute the precise dates that certain plaintiffs were employed by the relevant defendant. These disputes are not material to any issues discussed in this motion for summary judgment.

Pereda Abarca was employed as a delivery person from May 2011 until September 2017 at the 320 Park Avenue location. Id. ¶¶ 104-11. From time to time, Pereda Abarca was required to deliver ingredients to other locations. Id.

Ramos Flores was employed as a delivery person from August 2016 to September 2018. Id. ¶¶ 112-15. He began his employment working at the 1306 First Avenue location. Id. In addition to making deliveries, Ramos Flores declared that he delivered inventory at the 600 Third Avenue and 663 Lexington Avenue locations. Id.

Zapotitlan Sanchez was employed as a delivery person from March 2015 until May 2015, and again from March 2016 until July 2016 at the 600 Third Avenue location. Id. ¶¶ 116-20.

Zempoalteca Montes was employed as a delivery person from March 2015 until April 2016. Zempoalteca Montes worked out of the 1471 Third Avenue, 663 Lexington Avenue, and 1306 First Avenue locations. Id. ¶¶ 121-26.

Encalada Abad was employed as a delivery person from March 2009 until March 2018. Id. ¶¶ 127-35. Encalada Abad worked out of the 30 Rockefeller Center and 600 Third Avenue locations. Id.

Lema Mayancela was employed as a delivery person from 2014 or 2015 until October 2016. Id. ¶¶ 136-42. He was first on the payroll of Just Salad Hudson Square LLC and then was on the payroll of Just Salad 1471 3rd Ave LLC. Id.

Ramirez Ocegudea was employed as a delivery person from 2010 to November 2018. Id. ¶¶ 143-50. Ramirez Ocegudea worked at several locations including the 30 Rockefeller Center and 663 Lexington Avenue stores. Id.

Fernandez Gutierrez was employed as a delivery person from December 2010 to 2017 or 2018. Id. ¶¶ 151-58. He first worked at the 600 Third Avenue location and then at the 134 W 37th street location. Id.

Yuquilema Mullo was employed as a delivery person from September 2015 until March 2018. Id. ¶¶ 159-65. Yuquilema Mullo primarily worked at the 134 West 37th Street and 600 Third Avenue locations. Id.

Medel and Carranza were plaintiffs in a prior action before this Court involving similar claims against Kenner and certain Just Salad locations.[5] The undisputed evidence in that action established that Medel worked as a delivery person at the 320 Park Avenue, 600 Third Avenue, and 30 Rockefeller locations from January 2009 to October 2012. Camara v. Kenner, No. 16-cv-7078, 2018 WL 1596195, at *4 (S.D.N.Y. Mar. 29, 2018). The evidence also showed that Carranza worked as a delivery person at the 600 Third Avenue location from January 2011 to December 2011. Id. In

---

[5] The parties' Local Civil Rule 56.1 Statements in this action do not address Medel's or Carranza's employment history, the hours that they worked, or the work responsibilities that they had.

Camara, the Court found that Medel's and Carranza's claims arising under the FLSA were time-barred and dismissed their remaining state claims without prejudice for lack of subject matter jurisdiction. Id. at *5-6.[6]

The defendants now move for summary judgment dismissing all the claims advanced by the plaintiffs.

**II.**

The standard for granting summary judgment is well established. The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Id. at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter or

---

[6] The defendants represent that Rosario failed to appear for his deposition in this action and contend that his claims should be dismissed for failure to prosecute. The plaintiffs do not object to the dismissal of Rosario's claims without prejudice. Accordingly, all of Rosario's claims are dismissed without prejudice for failure to prosecute.

matters that "it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts which are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114–15 (2d Cir. 1998).

**III.**

**A.**

The defendants first argue that all claims against Kenner should be dismissed because he was not an "employer" of the plaintiffs within the meaning of the FLSA or the NYLL.

Liability under the FLSA extends only to "employers." Camara, 2018 WL 1596195, at *6 (quoting 29 U.S.C. § 216(b)). The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "An entity 'employs' an individual under the FLSA if it suffers or permits that individual to work." Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d Cir. 2003). For an individual to be an employer, there must be more than just "evidence that [the] individual is an owner of officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function . . .. Instead, to be an 'employer,' an individual must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." Irizarry v. Catsimatidis, 722 F.3d 99, 109 (2d Cir. 2013). "The determination of whether an employer-employee relationship exists for purposes of the

FLSA should be grounded in economic reality rather than technical concepts." Id. at 104.

The Court of Appeals for the Second Circuit has established a four-factor test to determine the "economic reality" of an employment relationship: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. at 105. This set of factors is intended to be "nonexclusive and overlapping," and are to be applied so as "to ensure that the economic realities test . . . is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." Irizarry, 722 F.3d at 105. A person or entity can also be an "employer" if the person or entity exercises functional control over the employee. Zheng, 355 F.3d at 71-72.

Similarly, liability under the NYLL extends only to "employers" and their "agents." N.Y. Lab. Law § 662(1). The definition of "employer" under the NYLL is "any person . . . employing any individual in any occupation, industry, trade, business or service" or "any individual . . . acting as employer." N.Y. Lab. Law §§ 190(3) & 651(6). The New York Court of Appeals has not yet answered the question of whether the test for "employer" status is the same under the FLSA and the NYLL,

see Irizarry, 722 F.3d at 117, but courts have generally assumed that it is. See Sethi v. Narod, 974 F. Supp. 2d 162, 188-89 (E.D.N.Y. 2013); Chu Chung v. New Silver Palace Rests., Inc., 272 F. Supp. 2d 314, 318 n.6 (S.D.N.Y. 2003); see also Ramirez v. Riverbay Corp., 35 F. Supp. 3d 513, 520-21 & n.2 (S.D.N.Y. 2014).

No reasonable jury could find that Kenner was the plaintiffs' "employer" under either the FLSA or NYLL. Although he is an owner and founder of Just Salad, there is no genuine dispute that Kenner did not exercise day-to-day supervision over delivery personnel and was not involved in scheduling or hiring/firing decisions. The plaintiffs have not submitted any evidence regarding Kenner's role in any just Salad Store. Moreover, there is no evidence in the record that Kenner ever gave any direction to any of the plaintiffs or ever interacted with any of the plaintiffs. The plaintiffs point to several aspects of Kenner's job responsibilities that they contend demonstrate that he was an employer of the plaintiffs, but these arguments are without merit. The fact that Kenner made certain high-level corporate level decisions that were remote from the day-to-day conditions of the plaintiffs' employment is insufficient to demonstrate that Kenner is an "employer" of the plaintiffs within the meaning of the NYLL or FLSA. See, e.g., Irizarry, 722 F.3d at 109 (evidence that a defendant "makes

corporate decisions that have nothing to do with an employee's function" is insufficient to show that the defendant is an "employer").[7] Accordingly, all claims against Kenner are dismissed with prejudice.

**B.**

The defendants move for summary judgment dismissing all claims against twelve defendants, arguing that there is no evidence that any plaintiff was ever employed by those defendants.[8] The plaintiffs do not dispute that they never worked at ten of these locations, but instead argue that all the Just Salad defendants are liable under the so-called single integrated enterprise theory of liability.[9] See Opp'n at 38-39.

The single integrated enterprise theory originally grew out of Title VII doctrine. See Arculeo v. On-Site Sales & Mktg.,

---

[7] For these same reasons, the Court found that Kenner was not an employer of the similarly situated plaintiffs in Camara. 2018 WL 1596195, at *6-8.

[8] The LLCs associated with these stores are: Just Salad GP LLC d/b/a Just Salad Fashion District; Just Salad Partners LLC d/b/a Just Salad Financial District; Just Salad Hudson Square LLC; Just Salad State Street LLC; Just Salad Park Slope LLC; Just Salad Herald Square LLC; Just Salad 2056 Broadway LLC; Just Salad 140 8th Ave LLC; Just Salad Woodbury LLC; Just Salad 291 7th Avenue LLC; and Just Salad 437 5th Avenue LLC. The defendants also move for summary judgment dismissing all claims against Just Salad LLC. Although the plaintiffs highlight evidence that Just Salad LLC was listed on certain plaintiffs' wage notices, the plaintiffs point to no other evidence that explains the legal relationship between Just Salad LLC and the other defendants or what role, if any, Just Salad LLC in the supervision and management of the plaintiffs' employment.

[9] The plaintiffs correctly note that certain of Lema Mayancela's payroll records appear to list Just Salad Hudson Square LLC as his employer at certain relevant times. See, e.g., ECF No. 140-8 at 52. The defendants point to no evidence disputing that Lema Mayancela worked at the location associated with this LLC during this period. Accordingly, claims against Just Salad Hudson Square LLC are not dismissed.

LLC, 425 F.3d 193, 198 (2d Cir. 2005). It holds multiple legally distinct entities liable as a single employer when the entities are a single integrated enterprise, as in the case of "parent and wholly-owned subsidiary corporations, or separate corporations under common ownership and management." Id. Whether a group of entities qualifies as a single integrated enterprise turns on four factors: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." Brown v. Daikin Am. Inc., 756 F.3d 219, 226 (2d Cir. 2014) (quoting Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1240 (2d Cir. 1995)). No one factor is dispositive; "control of labor relations is the central concern." Id. at 227 (quoting Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996)).

The Second Circuit Court of Appeals has yet to apply the single integrated enterprise rule to FLSA liability. Some district courts in this Circuit have applied the single integrated enterprise doctrine in the FLSA context. See, e.g., Flores v. 201 W. 103 Corp., 256 F. Supp. 3d 433, 440-41 (S.D.N.Y. 2017); Li v. Ichiro Sushi, Inc., No. 14-cv-10242, 2016 WL 1271068, at *6 (S.D.N.Y. Mar. 29, 2016); Cordova v. SCCF, Inc., No. 13-cv-5665, 2014 WL 3512838, at *3 (S.D.N.Y. July 16, 2014); Lopez v. Pio Pio NYC, Inc., No. 13-cv-4490, 2014 WL 1979930, at *3 (S.D.N.Y. May 14, 2014). Other district courts in

this Circuit have declined to apply the formal single integrated enterprise doctrine in the FLSA context and have instead used the traditional economic realities test to determine whether multiple legal entities constitute a single employer for FLSA purposes. See, e.g., Olvera v. Bareburger Grp. LLC, 73 F. Supp. 3d 201, 205-06 (S.D.N.Y. 2014); Gorey v. Manheim Servs. Corp., 788 F. Supp. 2d 200, 210 (S.D.N.Y. 2011).

In Camara, this Court found that different Just Salad locations should not be held jointly liable for the alleged misconduct of one another because the plaintiffs had failed to point to sufficient evidence to satisfy the single integrated enterprise or economic reality tests. 2018 WL 1596195, at *9. The same conclusion is appropriate here. Although the plaintiffs contend that certain human resources functions were centralized across the Just Salad locations, district managers worked with the general managers of certain locations, and certain policies applied across all locations, the plaintiffs fail to explain how the stores where the plaintiffs did not work had any control or supervision over them. There is also no evidence that the operations of different locations were "interrelated" or that the stores at which the plaintiffs did not work had any input into the employment or human resources decisions at the stores where the plaintiffs did work. Moreover, the record is devoid of any evidence suggesting that all the Just Salad stores are part

14

of the same corporate structure or under common ownership and management. Indeed, as in Camara, the plaintiffs have failed to identify any Just Salad franchisor or any corporate parent entity that might control all the Just Salad stores. 2018 WL 1596195, at *9.

Accordingly, summary judgment dismissing all claims against Just Salad LLC and the ten stores where the plaintiffs never worked is granted.

## IV.

### A.

The defendants move for summary judgment dismissing all FLSA claims advanced by Carranza and Medel as untimely. Claims alleging willful violations of the FLSA, such as the claims in this case, are subject to a three-year statute of limitations. Camara, 2018 WL 1596195, at *5 (citing 29 U.S.C. § 255(a)). Claims under the FLSA accrue "when the employer fails to pay the required compensation for any work week at the regular pay day for the period when the workweek ends." Id.

Carranza and Medel have not worked for any defendant since December 2011 and October 2012, respectively. Accordingly, all of Carranza's and Medel's FLSA claims are untimely unless their claims were filed before December 2014 or October 2015. Both plaintiffs filed their consents to become plaintiffs in this action on August 14, 2018. Therefore, all of Carranza's and

Medel's claims arising under the FLSA must be dismissed with prejudice as time-barred.

### B.

The remaining plaintiffs assert four categories of claims that arise under both the FLSA and NYLL: failure to pay the minimum wage and provide proper tip credit notices (Counts 5, 6, and 12); illegal retention of tips (Counts 1 and 2); unlawful kickbacks (Counts 3 and 4); and failure to pay adequate overtime wages (Counts 7, 8, and 9). The defendants move for summary judgment dismissing all these claims.

### 1.

The FLSA requires covered employers to pay employees a minimum wage of at least $7.25 per hour. 29 U.S.C. § 206(a)(1). The FLSA's definition of "wage" provides that, under certain circumstances, employers of "tipped employees" may apply part of that employees' tips towards the minimum wage. Trinidad v. Pret A Manger (USA) Ltd., 962 F Supp. 2d 545, 560 (S.D.N.Y. 2013) (citing 29 U.S.C. § 203(m)). The practice of crediting some of an employee's tips towards the minimum wage is commonly referred to as taking a "tip credit." Id. The plaintiffs contend that the defendants failed to comply with relevant tip credit requirements of the FLSA and that accordingly, the defendants failed to pay the plaintiffs the minimum wage as required by the FLSA. The defendants contend that they complied with all

16

relevant tip credit requirements and that in any event, the FLSA claims advanced by several plaintiffs must be dismissed.

   As an initial matter, the FLSA minimum wage claims advanced by certain plaintiffs fail irrespective of whether the defendants' conduct with respect to the tip credits was proper. An employee has a cause of action arising out of an employer's failure to comply with FLSA tip credit requirements "only if, without the tip credit, the employee's compensation would fall short of the minimum wage." See Trinidad, 962 F. Supp. 2d at 560-61; Azeez v. Ramaiah, No. 14-cv-5623, 2015 WL 1637871, at *6-7 (S.D.N.Y. Apr. 9, 2015).[10] It is undisputed that during the entire FLSA limitations period, the hourly salaries of Tecocoatzi-Ortiz, Baten, Ramos Flores, and Zapotitlan Sanchez did not drop below $7.50, which is above the federal minimum wage. See Statement ¶¶ 81-85, 96-99, 112-20. Accordingly, all FLSA minimum wage and tip credit claims advanced by Tecocoatzi-Ortiz, Baten, Ramos Flores, and Zapotitlan Sanchez are dismissed with prejudice. Whether the remaining minimum wage and tip

---

[10] At least one court has raised questions about these authorities in view of Congress's March 2018 amendments to the FLSA. See Benavidez v. Greenwich Hotel Ltd. P'ship, No. 16-cv-191, 2019 WL 1230357, at *12 (D. Conn. Mar. 15, 2019). Those amendments "created what appears to be a new, separate cause of action for the recovery of unpaid, or improperly withheld tips." Id. (citing 29 U.S.C. § 216(b) (effective Mar. 23, 2018)). The parties did not address these amendments in their papers. In any event, the plaintiffs did not advance any claim arising under Section 216(b) of the FLSA in their complaint. Accordingly, the cases cited above are still relevant for present purposes.

credit claims must also be dismissed depends on whether the
defendants' tip credit practices complied with the relevant
statutes.

### 2.

It is undisputed that for at least some time during the
FLSA and NYLL limitations periods, de la Cruz Rosas, Pereda
Abarca, Zempoalteca Montes, Encalada Abad, Lema Mayancela,
Yuquilema Mullo, Ramirez Ocegueda, and Fernandez Gutierrez were
paid hourly wages that, excluding tips, fell below $7.25 per
hour and that the defendants claimed tip credits against these
plaintiffs' wages. The plaintiffs also contend that Galeana's
hourly wages dropped below $7.25 per hour at some point during
the relevant limitations periods and that the defendants took a
tip credit against Galeana's wages.[11] Accordingly, these
plaintiffs may pursue FLSA or NYLL minimum wage claims if the
defendants' retention of the tip credits ran afoul of the
relevant requirements.

The plaintiffs argue that the defendants violated the FLSA
and NYLL tip credit and minimum wage requirements by (1) taking
a tip credit while illegally retaining or reducing the tips that
these plaintiffs received; and (2) taking a tip credit without

---

[11] Galeana advances a claim that a defendant took an illegal kickback in
violation of the FLSA and NYLL. This claim is addressed below and raises
genuine disputes of fact as to whether Galeana's hourly wage dropped below
$7.25 per hour for some period in 2016.

providing the proper notification to the plaintiffs on their respective dates of hire.

### a.

The plaintiffs contend that the defendants illegally reduced or retained their tips in violation of the FLSA and the NYLL in two ways: (1) by instituting a delivery fee in September 2017 and not remitting any part of that fee to the plaintiffs; and (2) by deducting credit card processing fees from the plaintiffs' tips that were paid by credit card.[12]

Any argument based on the delivery fee is without merit. First, there is no genuine dispute that third party delivery providers — Grub Hub and Seamless — took and retained the delivery fees, not the defendants. See ECF No. 132 ¶¶ 29-30. Even if the plaintiffs' average tips per week did in fact decline after the institution of the delivery fee, the defendants cannot be liable where, as here, the defendants did not receive or retain any part of the delivery fee. Second, irrespective of who retained the fee, the plaintiffs' claims are foreclosed because under the FLSA, a compulsory charge such as the delivery fee is not a tip. See In re Domino's Pizza, Inc.,

---

[12] The plaintiffs concede that Carranza is the only plaintiff that advanced a claim for tip or wage theft. As discussed above, that claim is time-barred. The plaintiffs have not pointed to any evidence in the record that could support a claim that any defendant committed tip or wage theft with respect to any other plaintiff. Accordingly, all claims based on alleged tip or wage theft are dismissed with prejudice.

No. 16-cv-6274, 2018 WL 1587593, at *3-4 (S.D.N.Y. Mar. 27, 2018) (rejecting the argument that a delivery fee was a tip; explaining that a mandatory flat delivery fee is a "compulsory charge for service, which does not constitute a tip." (citing 29 C.F.R. § 531.55(a)).[13]

The plaintiffs' arguments based on the credit card processing fees are likewise without merit because the plaintiffs made no such allegations in their complaint and raised the argument for the first time in their brief in opposition to the defendants' motion for summary judgment. Because it is "well-settled that a party may not raise new claims or theories of liability for the first time in opposition to summary judgment," any claims based on the credit card processing fees are dismissed. See Nagel v. County of Orange, No. 09-cv-9960, 2013 WL 1285465, at *5 (S.D.N.Y. Mar. 28, 2013).

Accordingly, all claims arising under the NYLL and the FLSA based on the allegation that the defendants illegally retained

---

[13] The delivery fee claims arising out of the NYLL are also without merit because under the NYLL, the delivery fee cannot have been a retained tip unless a reasonable customer would have understood it to be a "gratuity." See Belizaire v. Ahold U.S.A., Inc., 796 F. App'x 51, 52 (2d Cir. 2020). It is undisputed that the website through which orders were placed informed customers that a "delivery fee will be applied, but it is not a gratuity, and it is not distributed to the delivery staff. Feel free to reward exceptional service. But please do not feel obligated to do so." ECF No. 133-52 (emphasis added). No reasonable customer could have understood the delivery fee to be a "gratuity" in view of this clear and unambiguous message.

20

the plaintiffs' tips are dismissed with prejudice as to all remaining plaintiffs.

**b.**

The plaintiffs also contend that defendants violated the FLSA and New York law by taking tip credits without giving the plaintiffs proper notice. Under the FLSA, an employer may not claim a tip credit unless it has informed the employee of the provisions of the section of the FLSA allowing the tip credit. See Inclan v. N.Y. Hosp. Grp., Inc., 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015). The employer bears the burden of showing that it satisfied the notice requirement by, for example, "providing employees with a copy of § 203(m) and informing them that their tips will be used as a credit against the minimum wage as permitted by law." Id. "If the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage." Id. at 497. Even if the employee received tips at least equivalent to the minimum wage, the notice provision must be satisfied. Chung v. New Silver Palace Rest., Inc., 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002); see also Cucu v. 861 Rest. Inc., No. 14-cv-1235, 2017 WL 2389694, at *3 (S.D.N.Y. June 1, 2017).

Similarly, "New York state law allows employers to credit a portion of an employee's tips . . . as allowances against the

minimum wage requirement when certain preconditions are met."
Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253,
290 (S.D.N.Y. 2011). First, "prior to the start of employment,
an employer [must] give each employee written notice of the
employee's regular hourly pay rate, overtime hourly pay rate,
the amount of tip credit, if any, to be taken from the basic
minimum hourly rate, and the regular payday." 12 N.Y.C.R.R. §
146-2.2(a). The notice must "also state that extra pay is
required if tips are insufficient to bring the employee up to
the basic minimum hourly rate" and be provided to the employee
in English and in any other language spoken by the employee as a
primary language. Id. Second, "acknowledgment of receipt [of
this notice] signed by the employee [must] be kept on file for
six years." Id. § 146-2.2(c). As with the FLSA, it is the
employer's burden to prove compliance with the NYLL notice
requirement. Id. § 146-2.2(d).

The defendants argue that the record evidence demonstrates
that they complied with any tip credit notification obligations
as to all the plaintiffs. The defendants contend that the
undisputed evidence establishes the following: (1) the
plaintiffs were informed by their store manager at the time that
they were hired that the defendants would be taking a tip
credit, Statement ¶ 33; (2) the plaintiffs were furnished with
copies of Spanish and English versions of an employee handbook

that outlined the tip credit policy (the "Handbook," ECF No. 133-46) and the plaintiffs signed forms acknowledging that they "received and read a copy of the" Handbook; (3) posters in English and Spanish regarding the minimum wage were posted in store locations where they would be seen by all employees, Statement ¶ 36; (4) each week, the plaintiffs received paystubs that stated that a tip credit was taken to offset their wages and detailed the amount of tips that each plaintiff received, id. ¶¶ 38, 44-46; (5) the plaintiffs were apprised of and acknowledged their pay rates and the tip credit when they signed forms entitled "Notice and Acknowledgement of Pay Rate and Payday Under Section 195.1 of the New York State Labor Law" (the "Section 195 Forms"), Statement ¶ 48-59; and (6) the plaintiffs signed other tip notices in English and Spanish informing them that a tip credit would be taken, Statement ¶¶ 60-72. As noted above, only de la Cruz Rosas, Pereda Abarca, Zempoalteca Montes, Encalada Abad, Lema Mayancela, Yuquilema Mullo, Ramirez Ocegueda, Fernandez Gutierrez, and Galeana can maintain claims arising out of the defendants' alleged failure to comply with the FLSA tip credit requirements, including any notice obligations.[14]

---

[14] Because Tecocoatzi-Ortiz, Zapotitlan Sanchez, Baten, and Ramos Flores were always paid hourly wages above the federal minimum wage during the relevant limitations period, their FLSA claims relating to alleged tip credit notice failures are dismissed. See Azeez, 2015 WL 1637871, at *6-7.

Although the defendants contend that each plaintiff was verbally apprised of the defendants' tip credit policy when each plaintiff was hired, there are genuine disputes of material fact as to whether those conversations occurred.[15] The plaintiffs declared that they did not receive any such explanation of the defendants' tip credit practices. See, e.g., Yuquilema Mullo Aff. ¶¶ 18-19. Rachel Abrams, HR director at Just Salad, testified at her deposition that the plaintiffs were given verbal and written notice of the tip credit policies, but as explained below, the documentary evidence suggests that several plaintiffs were not in fact given any written notice at the time that they were hired. See ECF No. 133-1 at 69-70. In view of the plaintiffs' declarations and other evidence that contradicts Abrams's testimony, whether the plaintiffs were given verbal notice at the time of hire cannot be resolved against the plaintiffs on this motion for summary judgment. Moreover, the defendants' argument that it posted certain notices in Just Salad locations, without more, is insufficient to demonstrate that they satisfied their notice obligations. See Salinas v. Starjem Rest. Corp., 123 F. Supp. 3d 442, 467 (S.D.N.Y. 2015) (rejecting a similar argument). Accordingly, on this record, the

---

[15] Even if these conversations did occur, they would not have satisfied the defendants' notice obligations under the NYLL, which requires written notice. 12 N.Y.C.R.R. § 146-2.2(a).

defendants are only entitled to summary judgment on these claims if there is documentary evidence establishing that each plaintiff received a compliant notice at the proper time.

De la Cruz Rosas worked for certain defendants between March 2009 to September 2017. De la Cruz Rosas declared that Spanish is his primary language. De la Cruz Rosas Aff. ¶ 34. He did not sign a form acknowledging that he received the Handbook or any other wage notices until sometime in 2017. See Statement ¶ 65. The plaintiffs admit that since at least 2011, de la Cruz Rosas's paystubs included some version of the following notice:

> Hospitality ind: food serv wkrs-tip cred up to $3.75hr (other serv wrkrs up to 3.10) taken towards $8.75hr min wage. If cash wage + tips < 8.75hr, tip makeup added to = 8.75hr.

See, e.g., Miranda Decl. Ex. ZZ at 492 (the "Pay Stub Notice"); Statement ¶ 38.

In Camara, this Court found that if the only undisputed evidence with respect to notice for a particular plaintiff was that their paystubs had this exact message, "a reasonable jury could conclude . . . that the defendants have failed to establish that [the plaintiff] received proper notification prior to the start of his employment at Just Salad as the FLSA and NYLL require." 2018 WL 1596195, at *11. The same conclusion is appropriate for similarly situated plaintiffs here, particularly if Spanish is that plaintiff's primary language. Accordingly,

summary judgment dismissing de la Cruz Rosas's NYLL and FLSA tip credit notice claims is denied.

Pereda Abarca worked for certain defendants between May 2011 and September 2017. He only speaks and reads Spanish. Statement ¶¶ 104-11. On May 3, 2011, Pereda Abarca signed an acknowledgment that included the following clause: "I understand that my signature below indicates that I have read and understand the above statements and that I have received a copy of the [Handbook]." ECF No. 140-10 at 5 (the "Handbook Acknowledgement Form"). The Handbook in turn quoted 29 U.S.C. § 203(m) and provided in relevant part:

> Federal and state law permits the Company to take a tip credit toward the minimum hourly wages paid to certain tipped employees. Therefore, in consideration of the additional tip income received by service staff, the Company takes a tip credit with respect to the hourly rate paid directly to such employees. As a result, the hourly rate paid directly to such employees by the Company is less than the standard statutory minimum hourly wage rate.

Handbook at 8-9. This clear notice of the defendants' tip credit policy satisfied their notice obligations under the FLSA.[16] However, this notice omitted certain information

---

[16] The parties dispute whether a Spanish version of the Handbook was made available to employees. Although the defendants have not submitted a version of a Spanish version of the Handbook in connection with their motion for summary judgment, Abrams testified at her deposition that the defendants made a Spanish version of the Handbook available to employees during the relevant times. ECF No. 133-1 at 69. The plaintiffs point to no evidence that specifically disputes the existence of a Spanish version of the Handbook. Accordingly, on this record, there is no genuine dispute of fact that the

that is required under the NYLL. 12 N.Y.C.R.R. § 146-2.2(a)
(notice must list "the employee's regular hourly pay rate,
overtime hourly pay rate, the amount of tip credit, if any,
to be taken from the basic minimum hourly rate, and the
regular payday"). Accordingly, Pereda Abarca's FLSA tip
credit notice claims are dismissed with prejudice. Summary
judgment dismissing Pereda Abarca's NYLL tip credit notice
claims is denied.

Zempoalteca Montes worked for certain defendants
between March 2015 and April 2017. Zempoalteca Montes
primarily speaks and reads Spanish but speaks and reads a
little English. Statement ¶¶ 121-26. When he began his
employment on March 2, 2015, he signed a Handbook
Acknowledgement Form. ECF No. 133-47 at 2-3. Accordingly,
Zempoalteca Montes's FLSA tip credit notice claims are
dismissed with prejudice. Summary judgment dismissing
Zempoalteca Montes's NYLL tip credit notice claims is
denied.

Encalada Abad worked for certain defendants between
2009 and 2017 or 2018. Encalada Abad did not sign any
Section 195 or tip notice forms until sometime in 2017.
Statement ¶¶ 127-35. Although Encalada Abad's paystubs

---

defendants made a Spanish version of the Handbook available to the
plaintiffs.

included the Pay Stub Notice at all relevant times, this notice without more is insufficient. Accordingly, summary judgment dismissing Encalada Abad's NYLL and FLSA tip credit notice claims is denied.

Lema Mayancela worked for certain defendants between 2014 or 2015 and October 2016. Lema Mayancela Abad did not sign a Handbook Acknowledgement, Section 195, or tip notice form until sometime in March 2016. Statement ¶¶ 56, 70. Although Lema Mayancela's paystubs included the Pay Stub Notice at all relevant times, this notice without more is insufficient. Accordingly, summary judgment dismissing Lema Mayancela's NYLL and FLSA tip credit notice claims is denied.

Yuquilema Mullo worked for certain defendants between September 2015 and February 2018. Yuquilema Mullo did not sign a Section 195 or tip notice form until sometime in 2016 or 2017. Statement ¶¶ 55, 69. Although Yuquilema Mullo's paystubs included the Pay Stub Notice at all relevant times, this notice without more is insufficient. Accordingly, summary judgment dismissing Yuquilema Mullo's NYLL and FLSA tip credit notice claims is denied.

Ramirez Ocegueda worked for certain defendants between 2010 and 2018. Ramirez Ocegueda did not sign a Section 195 or tip notice form until sometime in 2017. Statement ¶ 67.

28

Although Ramirez Ocegueda's paystubs included the Pay Stub Notice at all relevant times, this notice without more is insufficient. Accordingly, summary judgment dismissing Ramirez Ocegueda's NYLL and FLSA tip credit notice claims is denied.

Fernandez Gutierrez worked for certain defendants from December 2010 to 2017. Fernandez Gutierrez signed a Section 195 Form on November 23, 2011. This form clearly apprised Fernandez Gutierrez, in English and Spanish, that his employer was taking a $1.25 per hour tip credit against his wages. ECF No. 133-49 at 11. Accordingly, Fernandez Gutierrez's NYLL and FLSA tip credit notice claims are dismissed with prejudice.[17]

Galeana worked for certain defendants from January 2016 to June 2018. Galeana signed a Section 195 Form when he was hired on January 12, 2016. ECF No. 133-49 at 2. This form clearly apprised Galeana, in English and Spanish, that his employer was taking a $1.50 per hour tip credit against his wages. Accordingly, Galeana's NYLL and FLSA tip credit notice claims are dismissed with prejudice.

---

[17] Any claim by Fernandez Gutierrez that his notices were insufficient because they were not provided at the time of hire in 2010 is time-barred. See N.Y. Labor Law § 198(3); 29 U.S.C. § 255(a).

In sum, all FLSA tip credit notice claims advanced by
the following plaintiffs are dismissed with prejudice:
Tecocoatzi-Ortiz, Zapotitlan Sanchez, Baten, Ramos Flores,
Pereda Abarca, and Zempoalteca Montes. All FLSA and NYLL
tip credit notice claims advanced by Fernandez Gutierrez
and Galeana are dismissed with prejudice. Summary judgment
dismissing the remaining NYLL and FLSA tip credit notice
claims is denied.

### 3.

The plaintiffs next contend that the defendants violated
the FLSA and the NYLL by causing certain plaintiffs to perform
non-tipped tasks for more than the allowable amount of time.
"Under the FLSA, tipped employees who spend a substantial amount
of time, or more than twenty percent of their working time,
engaged in related but non-tip-producing work must be paid the
full minimum wage for the time spent performing the nontipped
work." Salinas, 123 F. Supp. 3d at 470. Under the NYLL, if a
tipped employee performs non-tipped work "(a) for two hours or
more, or (b) for more than 20 percent of his or her shift,
whichever is less, the wages of the employee shall be subject to
no tip credit for that day." Id. (quoting 12 N.Y.C.R.R. § 146-
2.9).

The following plaintiffs contend that they spent more than
the maximum allowable amount of times under the NYLL and FLSA

performing non-tipped work: Tecocoatzi-Ortiz, de la Cruz Rosas, Galeana, Baten, Pereda, Encalada Abad, Ramirez Ocegueda, Ramos Flores, and Zempoalteca Motes.[18] Id. ¶¶ 81-111, 121-35, 143-50; Ramos Flores Aff. ¶ 13; Zempoalteca Motes Aff. ¶ 10.

Tecocoatzi-Ortiz, Baten, and Ramos Flores each advance claims related to non-tipped side work arising out of the FLSA and the NYLL. However, it is undisputed that during the relevant limitations period, Tecocoatzi-Ortiz, Baten, and Ramos Flores were always paid at least $7.50 per hour. Because Tecocoatzi-Ortiz, Baten, and Ramos Flores were paid the "full minimum wage for the time spent performing the nontipped work," see Salinas, 123 F. Supp. 3d at 470, their non-tipped side work claims arising under the FLSA are without merit and must be dismissed.[19]

By contrast, de la Cruz Rosas, Pereda Abarca, Encalada Abad, Zempoalteca Motes, Galeana, and Ramirez Ocegueda may have meritorious FLSA side work claims because they contend that they

---

[18] The following plaintiffs declared that they performed some non-tipped side work but did not declare or point to any evidence that this side work exceeded the maximum allowable amounts under the NYLL or FLSA: Lema Mayancela, Zapotitlan Sanchez, Yuquilema Mullo, and Fernandez Gutierrez. Accordingly, these plaintiffs' non-tipped side work claims arising out of the NYLL and FLSA are dismissed with prejudice.

[19] These plaintiffs' non-tipped side work claims arising under New York law cannot be dismissed with prejudice. Each of these plaintiffs declared that they performed more than the maximum allowable amount of non-tipped side work under New York law and it is undisputed that the defendants took a tip credit against their wages. Unlike the FLSA, an employee can maintain a non-tipped side work claim under New York law even if that employee was paid the minimum wage for that work. See 12 N.Y.C.R.R. § 146-2.9. Accordingly, summary judgment dismissing these plaintiffs' non-tipped side work claims arising under New York law with prejudice is denied.

were paid below the minimum wage while they were performing the non-tipped side work. These plaintiffs support their non-tipped side work claims with declarations and deposition testimony indicating that they performed more than the allowable state and federal amount of non-tipped side work during the relevant times. The defendants contend that these claims are without merit because the defendants had certain "safeguards" in place to ensure that the plaintiffs would not perform non-tipped duties for more than 20% of their working time. See generally ECF Nos. 131, 133-1. The defendants further contend that the plaintiffs' testimony is incredible, arguing that the plaintiffs could not have earned the amount of tips that they did during the relevant time periods if they spent as much time as they claim performing non-tipped work.

"It is axiomatic that assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Ricks v. O'Hanlon, No. 07-cv-9849, 2010 WL 245550, at *6 (S.D.N.Y. Jan. 19, 2010); see also Hayes v. N.Y. Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996) ("In applying [the summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses."). In this case, the plaintiffs' testimony is not so incredible that it can simply be disregarded at the summary judgment stage. Therefore, there are genuine

disputes of material fact as to whether the alleged policies were followed and whether the plaintiffs in fact performed non-tipped work in excess of the relevant statutory provisions. Accordingly, summary judgment dismissing the non-tipped side work claims of de la Cruz Rosas, Zempoalteca Motes, Pereda Abarca, Encalada Abad, Ramirez Ocegueda, and Galeana is denied.

In sum, the non-tipped side work claims arising under the FLSA advanced by the following plaintiffs are dismissed with prejudice: Tecocoatzi-Ortiz, Baten, and Ramos Flores. The non-tipped side work claims arising under the FLSA and the NYLL for the following plaintiffs are dismissed with prejudice: Lema Mayancela, Zapotitlan Sanchez, Yuquilema Mullo, and Fernandez Gutierrez. Summary judgment dismissing the remaining NYLL and FLSA non-tipped side work claims is denied.

**4.**

Only one plaintiff, Galeana, submits evidence that the defendants took a "kickback" in violation of the FLSA and NYLL. Under the FLSA and associated regulations, "if an expense is deducted from an employee's paycheck, included in the calculation of wages or the employee is required to purchase the item at his own expense, and the cost of the item reduces the employee's wage in any workweek below the minimum wage, the expense will be considered a 'kickback,' and the employer will have violated the FLSA." Salazar-Martinez v. Fowler Bros., Inc.,

781 F. Supp. 2d 183, 191 n.5 (W.D.N.Y. 2011) (citing 29 C.F.R. §
531.35). Under the NYLL, it is "unlawful for any person ... to
request, demand, or receive ... a return, donation, or
contribution of any part or all of said employee's wages [or]
salary, ... upon the statement, representation, or understanding
that failure to comply with such request or demand will prevent
such employee from procuring or retaining employment." N.Y. Lab.
Law § 198-b.

Galeana declared that "in one instance, where one cash
order was mistaken as a credit card order and the Just Salad
customer did not pay, I was required to pay the forty six dollar
($46) order from my pocket." Galeana Aff. ¶ 16. Galeana further
declared that his manager told him that if Galeana did not pay
for the order out of pocket, Galeana would be terminated. Id. ¶
17. The defendants do not specifically address this claim in
their motion for summary judgment. The defendants also do not
point to any evidence disputing this claim or contend that
Galeana's wages for that period were above the federal minimum
wage even if the alleged kickback was taken. Accordingly,
summary judgment dismissing Galeana's kickback claim is denied.
Because the plaintiffs point to no evidence supporting any
kickback claim arising under the FLSA or NYLL asserted by any
other plaintiff, all those claims are dismissed with prejudice.

**5.**

The plaintiffs contend that the defendants violated the FLSA and the NYLL by failing to pay the defendants the proper overtime wages. Under Section 207 of the FLSA, employees must be compensated "at a rate not less than one and one-half times the regular rate at which [they are] employed" for every hour worked in excess of forty in a given workweek. 29 U.S.C. § 207(a)(1); see also Hypolite v. Health Care Servs. of N.Y. Inc., 256 F. Supp. 3d 485, 491 (S.D.N.Y. 2017). Federal regulations provide that a "tipped employee's regular rate of pay includes the amount of tip credit taken by the employer." Copantitla, 788 F. Supp. 2d at 291 (quoting 29 C.F.R. § 531.60). Accordingly, for tipped employees, the proper overtime wage is calculated by multiplying the employee's "regular rate of pay" by 1.5 and then subtracting any claimed tip credit from the resulting amount. See id. (quoting Ventura v. Bebo Foods, Inc., 738 F. Supp. 2d 8, 16 n.1 (D.D.C. 2010)). The NYLL contains the similar requirements. Id. at 292 ("A 2009 Opinion Letter from the [New York Department of Labor] uses the same formula to calculate overtime pay as does Ventura . . ."). However, if an employer fails to comply with the statutory tip credit requirements, then a tip credit cannot be taken against an employee's overtime wages. See, e.g., Camara, 2018 WL 1596195, at *13.

35

There is no genuine dispute that during the statute of limitations period, the following plaintiffs worked overtime and received overtime wages that were calculated correctly in accordance with the formula described above: Tecocoatzi-Ortiz, Galeana, Pereda Abarca, Ramos Flores, Zapotitlan Sanchez, Zempoalteca Montes, and Fernandez Gutierrez. Because the defendants were entitled to take a tip credit against these plaintiffs' wages under the FLSA, their FLSA overtime claims fail and must be dismissed with prejudice.[20] Summary judgment dismissing Galeana's and Fernandez Gutierrez's overtime claims arising under the NYLL is also appropriate because the notices that they received complied with both the FLSA and the NYLL.

As discussed above, there are genuine disputes as to whether the defendants were entitled to take a tip credit under the FLSA and/or the NYLL with respect to de la Cruz Rosas, Encalada Abad, Yuquilema Mullo, Ramirez Ocegueda, Zempoalteca Montes, and Pereda Abarca in view of alleged notice issues.[21]

---

[20] Summary judgment dismissing the overtime claims arising under New York law advanced by Tecocoatzi-Ortiz, Pereda Abarca, Ramos Flores, Zapotitlan Sanchez, and Zempoalteca Montes cannot be dismissed with prejudice. There are genuine disputes as to whether the defendants satisfied their tip credit notice obligations under New York law for these plaintiffs. See supra Section IV.B.2.b; see also Statement ¶¶ 81-85, 112-20. Accordingly, whether the defendants were entitled under New York law to take a tip credit against these plaintiffs' overtime wages cannot be resolved on this motion for summary judgment.

[21] De la Cruz Rosas, Encalada Abad, Yuquilema Mullo, and Ramirez Ocegueda have tip credit notice claims arising under both the FLSA and NYLL because the notices that they were given do not appear to have complied with either statute. Zempoalteca Montes and Pereda Abarca have tip credit notice claims arising solely under the NYLL because they signed a Handbook Acknowledgment

Moreover, the record evidence demonstrates that these plaintiffs each worked more than forty hours in at least one week during the relevant statute of limitations period and that the defendants took a tip credit against those wages. Accordingly, because the issue of whether the defendants were entitled to take any tip credit as to these plaintiffs cannot be resolved on this motion for summary judgment, these plaintiffs' overtime claims cannot be dismissed. See, e.g., Camara, 2018 WL 1596195, at *13 (denying motion for summary judgment dismissing overtime claims because there were material issues of fact as to whether the defendants were entitled to take tip credits against the plaintiffs' overtime wages).

Lema Mayancela declared that he worked 69 hours in one week in September 2014 and October 2014. Lema Mayancela Aff. ¶ 6. However, Lema Mayancela also declared that he did not start working for any defendant until April 24, 2015. Id. ¶ 2. Lema Mayancela's contention with respect to the alleged 69-hour week is also contradicted by his payroll records, which demonstrate that he never worked more than forty hours in one week throughout his employment. See ECF Nos. 140-8, 140-56. In view of this evidence, Lema Mayancela's internally inconsistent statement that he worked overtime in 2014 is insufficient to

---

Form when they were hired, which satisfied the defendants' obligations under the FLSA but not the NYLL. See supra Section IV.B.2.b.

create a genuine dispute of material fact with respect to whether he ever worked more than forty hours in one week.[22] Accordingly, summary judgment dismissing Lema Mayancela's NYLL and FLSA overtime claims with prejudice is granted.

There is likewise no evidence that Baten ever worked more than forty hours in one week during the statute of limitations period. Accordingly, summary judgment dismissing Baten's NYLL and FLSA overtime claims with prejudice is granted.

In sum, the overtime claims arising under the FLSA advanced by the following plaintiffs are dismissed with prejudice: Tecocoatzi-Ortiz, Baten, Galeana, Pereda Abarca, Ramos Flores, Zapotitlan Sanchez, Zempoalteca Montes, Fernandez Gutierrez, and Lema Mayancela. The overtime claims arising under the NYLL advanced by Galeana, Fernandez Gutierrez, Lema Mayancela, and Baten are also dismissed with prejudice. Summary judgment dismissing the remaining NYLL and FLSA overtime claims is denied.

### C.

All the federal claims of the following plaintiffs were dismissed above: Tecocoatzi-Ortiz, Baten, Ramos Flores, Zapotitlan Sanchez, Fernandez Gutierrez, Medel, and Carranza. The defendants argue that the Court should decline to exercise

---

[22] Any FLSA claim arising from the alleged overtime that Lema Mayancela worked in 2014 is also time-barred under the three-year statute of limitations.

supplemental jurisdiction over the remaining state law claims advanced by these plaintiffs.

Whether to exercise supplemental jurisdiction under 28 U.S.C. § 1367 "is within the sound discretion of the district court." Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 117 (2d Cir. 2013). Courts "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity" to decide whether to exercise supplemental jurisdiction. Id. at 117-18. These factors counsel against hearing state law claims when the federal claims against a party are dismissed. See id. ("Once all federal claims have been dismissed, the balance of factors will usually point toward a declination."); 28 U.S.C. § 1367(c)(3).

The Court will not exercise supplemental jurisdiction over these plaintiffs' state law claims. Any concerns about judicial economy, convenience, and fairness are limited because this case is still at a relatively early stage of the litigation. See Camara, 2018 WL 1596195, at *6 (quoting Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."))). Moreover, while there may be some overlap at a high level of generality between these plaintiffs' state law claims on one hand and the remaining plaintiffs' federal and state law claims on the other, the proof that would

39

support the claims of each plaintiff is distinct. As illustrated above, whether a plaintiff has a meritorious claim turns on evidence unique to each plaintiff. For example, the plaintiffs had different work schedules, were not paid at a uniform hourly rate, and were notified of the tip credit practices in different ways and at different times. See id.

Accordingly, all remaining state law claims advanced by the following plaintiffs are dismissed without prejudice for want of subject matter jurisdiction: Tecocoatzi-Ortiz, Baten, Ramos Flores, Zapotitlan Sanchez, Fernandez Gutierrez, Medel, and Carranza.

**V.**

The Court now addresses the remaining state law claims advanced by de la Cruz Rosas, Galeana, Pereda Abarca, Zempoalteca Montes, Encalada Abad, Lema Mayancela, Yuquilema Mullo, and Ramirez Ocegueda.

**A.**

Under New York law, when an employee works more than ten hours in a single day, that employee is entitled to receive an additional hour of minimum wage pay. 12 N.Y.C.R.R. § 146-1.6. Claims alleging violations of this provision are often referred to as "spread of hours" claims.

In their opposition brief and Local Civil Rule 56.1 statement, the plaintiffs only point to evidence that could

support a spread of hours claim by Tecocoatzi-Ortiz. However, this claim was dismissed without prejudice for the reasons given above. Because none of the plaintiffs with remaining state law claims have pointed to any evidence supporting a spread of hours claim, any such claims are dismissed with prejudice.

### B.

New York law requires employers to maintain weekly payroll records for each employee that, among other things, reflect personal identifying information for each employee and the wages earned for the relevant pay period. See 12 N.Y.C.R.R. § 146-2.1. The defendants moved for summary judgment dismissing the plaintiffs' claims arising under these regulations, arguing that the payroll records that the defendants submitted in connection with their motion for summary judgment demonstrate that the defendants complied with the statutory requirements. The plaintiffs do not appear to have responded to this argument in their brief and thereby abandon these claims. See Camara, 2018 WL 1596195, at *14. In any event, the records that the defendants submitted seem to satisfy the necessary requirements. Accordingly, any payroll records claims (Count 11) are dismissed with prejudice.

### C.

New York law requires employers to "furnish each employee with a statement with every payment of wages" listing, among

other things, "allowances, if any, claimed as part of the minimum wage." N.Y. Lab. Law § 195(3). The plaintiffs contend that the wage statements that the defendants furnished to the plaintiffs violated this requirement because the notices listed "only the total tip credit taken." See Opp'n at 43. The plaintiffs also argue that the wage statements were defective because they informed the plaintiffs that "a tip credit up to a certain threshold could be taken, but not the actual amount being taken." Id.

The plaintiffs' arguments are without merit. The plaintiffs do not appear to contest that the plaintiffs' wage statements apprised the plaintiffs of the total tip credit that the defendants took in the relevant earnings period. The plaintiffs do not cite to any authority that supports their proposed interpretation of the statute or offer any persuasive reason for why a notice of the total tip credit claimed for a given pay period is not a sufficient disclosure that they defendants took an "allowance" against the plaintiffs' wages. Accordingly, any wage statement claims (Count 13) are dismissed with prejudice.

D.

The defendants move for summary judgment dismissing the plaintiffs' claims seeking reimbursement of uniform maintenance costs and costs associated with the plaintiffs purchasing and maintaining delivery bicycles.

42

Under New York law, employers are typically required to pay "uniform maintenance pay" for the maintenance of their employees' required uniforms. <u>See</u> 12 N.Y.C.R.R. § 146-1.7. But under the "wash and wear" exemption, an employer is not required to pay the uniform maintenance pay if the uniforms:

(1) are made of "wash and wear" materials;

(2) may be routinely washed and dried with other personal garments;

(3) do not require ironing, dry cleaning, daily washing, commercial laundering, or other special treatment; and

(4) are furnished to the employee in sufficient number, or the employee is reimbursed by the employer for the purchase of a sufficient number of uniforms, consistent with the average number of days per week worked by the employee.

<u>Id.</u>

It is undisputed that the plaintiffs were required to wear a Just Salad t-shirt as part of their uniform. The plaintiffs argue that they were not given enough t-shirts by their employers and that consequently, they had to launder the t-shirts more often that they did their regular clothes and incur related expenses. The defendants contend that the plaintiffs were provided with an appropriate number of t-shirts and that the plaintiffs failed to provide a persuasive explanation for why their Just Salad t-shirts needed to be washed daily.

The defendants' argument fails. The defendant overlooks the Handbook, which explains that the defendants would provide each

43

employee with "one (1) Just Salad shirt" that must be worn at work and "kept clean, wrinkle free, and in good condition." Handbook at 18. The plaintiffs in turn declared that in order to keep these t-shirts clean, they had to launder them multiple times per week. See, e.g., Zempoalteca Montes Aff. ¶¶ 20-21. This evidence raises genuine disputes of material fact as to whether the defendants furnished the plaintiffs with enough t-shirts and therefore whether the defendants can avoid liability through the wash and wear exemption.[23] Accordingly, summary judgment dismissing any remaining uniform maintenance claims is denied.

Finally, the plaintiffs contend that the defendants breached an implied contract by not reimbursing the plaintiffs for costs and expenses related to the plaintiffs' use of bicycles in the course of their employment. The defendants move for summary judgment dismissing these claims.

In their brief in opposition to the defendants' motion for summary judgment, the plaintiffs appear to understand their claim relating to bicycle maintenance costs to be one arising under the FLSA. The plaintiffs argue that they are entitled to costs associated with bicycle maintenance because the bicycles

---

[23] Although this Court dismissed similar claims arising under the uniform maintenance regulations in Camara, it did so because the plaintiffs in that action abandoned those claims and did not argue that they were not provided with enough t-shirts. 2018 WL 1596195, at *13.

were tools of trade and the maintenance costs incurred by the plaintiffs caused their wages to drop below the federal minimum wage. <u>See</u> Opp'n at 44. However, no such FLSA claims were included in the plaintiffs' complaint. Instead, the complaint framed claims arising out of bicycle costs solely as claims for breach of implied contract. <u>See</u> Compl. ¶¶ 515-25. Because the plaintiffs cannot advance new claims for the first time in their opposition brief, any FLSA claims relating to bicycle maintenance costs are dismissed.[24]

To succeed on a claim for breach of implied-in-fact contract under New York law, a plaintiff must demonstrate (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages. <u>See</u> <u>Roelcke v. Zip Aviation, LLC</u>, No. 15-cv-6284, 2021 WL 5491395, at *9 (S.D.N.Y. Nov. 23, 2021). The plaintiffs did not address any of these requirements in their briefing or otherwise point to any evidence that supports the existence of an implied-in-fact contract. Accordingly, any bicycle maintenance claims (Count 15) are dismissed with prejudice.

---

[24] In any event, any FLSA or NYLL claim relating to bicycle maintenance costs advanced here would fail for the same reasons that substantially similar claims failed in <u>Camara</u>. 2018 WL 1596195, at *14.

**VI.**

In a bench opinion dated January 10, 2020, the Court denied the plaintiffs' motion for collective certification and court-authorized notice pursuant to 29 U.S.C. § 216(b) without prejudice. See ECF No. 77. In so doing, the Court explained that under the then-existing record, "determining whether violations of the FLSA occurred for each of the plaintiffs is an individualized inquiry" and that "it would not be possible" to resolve those claims on a collective basis. Id. at 24.

Now, after the defendants filed their motion for summary judgment, the plaintiffs filed a "cross motion" for class certification seeking certification of the following class pursuant to Federal Rule of Civil Procedure 23:

> All deliverymen and food preparers who were employed or are currently employed by Defendants during the six years immediately preceding the initiation of this action, or August 14, 2012, up to the date of the decision on [the cross motion for class certification].

The defendants argue that the plaintiffs' cross motion should be denied because it is untimely, improper, and because the proposed class does not meet any of the requirements for class certification under Rule 23.

**A.**

The defendants first argue that the plaintiffs' cross motion should be denied because it is untimely.

"Class certification is to be decided 'at an early practicable time' after the commencement of a suit." Jones v. Ford Motor Credit Co., 358 F.3d 205, 215 (2d Cir. 2004) (quoting Fed. R. Civ. P. 23(c)(1)(A)). "A party's failure to move for class certification until a late date is a valid reason for denial of such a motion." Kapiti v. Kelly, No. 07-cv-3782, 2008 WL 3874310, at *3 (S.D.N.Y. Aug. 18, 2008).

The plaintiffs' cross motion for class certification is untimely because it comes more than three years after they filed this action, four months after fact discovery closed (and after the defendants had the opportunity to take class discovery), and after the deadline for filing dispositive motions. Courts in this Circuit have found motions for class certification filed on similar timelines to be "not merely untimely[,] but prejudicially so." See, e.g., Luo v. Panarium Kissena, Inc., No. 15-cv-3642, 2020 WL 9456895, at 6 (E.D.N.Y. Sept. 16, 2020), report and recommendation adopted, 2021 WL 1259621 (E.D.N.Y. Apr. 6, 2021) (denying a motion for class certification as untimely where the plaintiff waited "five years after the Complaint was filed and almost one year after the close of discovery" to file the motion); see also Kapiti, 2008 WL 3874310, at *3 (denying motion where plaintiff waited "nearly a year

47

after the Complaint was filed and barely one month before the close of discovery to seek leave to file a motion for class certification."). The conclusion that the plaintiffs' cross motion is untimely is corroborated by the fact that the plaintiffs have offered no adequate explanation for having waited this long to move for class certification. The delay is particularly troubling because the plaintiffs rely on their own declarations as the central pieces of evidence in support of their cross motion, which they could have drafted at any time. Indeed, these declarations are similar to the ones that the plaintiffs filed with their motion for conditional collective certification, which was filed in August 2019.

In sum, the timing of the plaintiffs' cross motion prejudices the defendants and "undermine[s] the efficiency of the judicial process." See Kapiti, 2008 WL 3874310, at *4. Accordingly, the cross motion is denied as untimely.

**B.**

The plaintiffs' cross motion also fails on the merits. To succeed on a motion for class certification, a plaintiff first must satisfy the prerequisites set forth in Rule 23(a) of the Federal Rules of Civil Procedure:

(1) the class is so numerous that joinder of all members is impracticable;

> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

"Second, plaintiffs must show that the putative class falls within one of the three categories set forth in Rule 23(b)." Kapiti, 2008 WL 3874310, at *2. The party seeking class certification bears the burden of establishing Rule 23's requirements by a preponderance of the evidence. Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010). A court must conduct a rigorous analysis to determine if those requirements are met, resolving any factual disputes relevant to the Rule 23 analysis. See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011).

The plaintiffs seek certification under Rule 23(b)(3) and therefore must demonstrate, in addition to numerosity, commonality, typicality, and adequacy of representation, that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The plaintiffs have plainly failed to demonstrate several necessary conditions for class certification,

including commonality, typicality, predominance, and superiority. With respect to commonality and typicality, the plaintiffs must point to evidence, "usually in the form of affidavits, statistical evidence, or both, tending to show the existence of a class of persons affected by a company-wide policy." See Eng-Hatcher v. Sprint Nextel Corp., No. 07-cv-7350, 2009 WL 7311383, at *6 (S.D.N.Y. Nov. 13, 2009) (finding that commonality and typicality were not satisfied because the plaintiff "failed to establish that" an allegedly illegal policy "was uniformly applied" to all class members); see also In re Fosamax Prods. Liab. Litig., 248 F.R.D. 389, 399 (S.D.N.Y. 2008) (finding typicality not satisfied because "almost every element [of the] claim will require highly individualized proof of each class members' . . . circumstances"). But as the summary judgment analysis above demonstrates, the plaintiffs' claims here do not arise from any common policy or plan. To the contrary, the plaintiffs' claims rise and fall based on the particular working conditions experienced by each plaintiff. That the defendants had no class wide policy related to the plaintiffs' claims is evidenced by the fact that: (1) some plaintiffs signed appropriate tip notices at the proper times while others did not; (2) some plaintiffs were paid

50

below $7.25 per hour excluding tips while others were not;
(3) some plaintiffs worked overtime while others did not;
(4) some plaintiffs have evidence that they worked more
than 20% of their time on non-tipped work while others do
not; and so on. The evidence clearly shows that the
plaintiffs' claims arise from the unique experiences that
each plaintiff had working at their respective Just Salad
locations and are not traceable to any universally adopted
and followed unlawful policies.[25]

For these same reasons, questions of fact relating to each
plaintiff will certainly predominate over questions common to
any class, making resolution of these claims by class action
inefficient and not feasible. The claims advanced by the
plaintiffs could not be resolved on this motion for summary
judgment without delving into the experience that each plaintiff
had working for the defendants and parsing the evidence unique
to each plaintiff. Because none of the plaintiffs' claims could
be resolved without a detailed analysis of evidence particular

---

[25] The plaintiffs' proposed class definition is also defective because it
includes "food preparers." Although some plaintiffs contend that they
prepared food as part of their non-tipped side work, there is no dispute that
all the plaintiffs were employed to be delivery workers and not food
preparers. And there is no evidence that those who were employed as food
preparers by the defendants had experiences like any of the plaintiffs or
have possibly viable claims arising under any of the statutes at issue in
this case.

to each plaintiff, these claims plainly cannot and should not be resolved on a class-wide basis.

Accordingly, because the plaintiffs have failed to demonstrate commonality, typicality, predominance, and superiority, the plaintiffs' cross-motion for class certification is denied.

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not discussed above, the arguments are either moot or without merit. For the foregoing reasons:

- The plaintiffs' cross motion for class certification is **denied;**

- All claims against the following defendants are **dismissed:** Kenner, Just Salad LLC, Just Salad GP LLC d/b/a Just Salad Fashion District; Just Salad Partners LLC d/b/a Just Salad Financial District; Just Salad State Street LLC; Just Salad Park Slope LLC; Just Salad Herald Square LLC; Just Salad 2056 Broadway LLC; Just Salad 140 8th Ave LLC; Just Salad Woodbury LLC; Just Salad 291 7th Avenue LLC; and Just Salad 437 5th Avenue LLC;

- All of Rosario's claims are **dismissed without prejudice** for failure to prosecute;

- All the plaintiffs' illegal retention of tips claims arising under the FLSA and NYLL, including those for wage or tip theft are **dismissed with prejudice;**

- All the plaintiffs' claims arising under the FLSA and NYLL relating to kickbacks, except for those advanced by Galeana, are **dismissed with prejudice;**

- All the claims arising under the FLSA advanced by Tecocoatzi-Ortiz, Baten, Ramos Flores, Zapotitlan Sanchez, Carranza, and Medel are **dismissed with prejudice.** Baten's overtime claim arising under the NYLL is **dismissed with prejudice.** All these

plaintiffs' remaining state law claims are **dismissed without prejudice**;

- All the tip credit notice and overtime claims arising under the FLSA advanced by Galeana, Pereda Abarca, Zempoalteca Montes, and Fernandez Gutierrez are **dismissed with prejudice**;

- All the tip credit notice and overtime claims arising under the NYLL advanced by Galeana and Fernandez Gutierrez are **dismissed with prejudice**;

- All the overtime claims arising under the FLSA and NYLL advanced by Lema Mayancela are **dismissed with prejudice**;

- All the non-tipped side work claims arising under the FLSA and the NYLL advanced by Lema Mayancela, Fernandez Gutierrez, and Yuquilema Mullo are **dismissed with prejudice**;

- All remaining claims arising under state law advanced by Fernandez Gutierrez are **dismissed without prejudice**;

- All remaining claims arising under state law advanced by the following plaintiffs, except for those relating to uniform maintenance costs, are **dismissed with prejudice**: de la Cruz Rosas, Galeana, Pereda Abarca, Zempoalteca Montes, Encalada Abad, Lema Mayancela, Yuquilema Mullo, and Ramirez Ocegueda.

- All other claims and defendants remain in this case.

The Clerk is directed to close Docket Nos. 130 and 142.

The parties are directed to submit a joint pre-trial order, together with any motions in limine, requests to charge, and proposed voir dire questions, by April 1, 2022. Responses and objections are due by April 8, 2022.

**SO ORDERED.**

**Dated:**     **New York, New York**
            **February 25, 2022**

                                                John G. Koeltl
                                        United States District Judge

54